NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 07a0317n.06
Filed: May 8, 2007

No. 06-3704

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| AISSATO BAILO BAH, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )　**ON PETITION FOR REVIEW OF AN** |
| | )　**ORDER OF THE BOARD OF** |
| | )　**IMMIGRATION APPEALS** |
| ALBERTO GONZALEZ, | ) |
| | ) |
| Respondent. | ) |
| | ) |
| | ) |
| _____ | ) |

**BEFORE: ROGERS AND GRIFFIN, Circuit Judges; RUSSELL, District Judge**[*]

**RUSSELL, District Judge.** Petitioner Ms. Aissata Bailo Bah ("Ms. Bah") appeals the Board of Immigration Appeals' ("BIA") decision denying the motion of Ms. Bah to reopen her petition for asylum. Ms. Bah contends that the BIA abused its discretion in not reopening her petition because she experienced changed circumstances after she had appeared in front of the Immigration Judge that warranted granting her motion to reopen.

**BACKGROUND**

_____

[*] Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

Ms. Bah was born in Guinea in 1975. At the age of seven, Bah was subjected to "female genitalia mutilation,"[1] ("FGM") as it was forced upon her by four women who held her down on the floor, while another cut her with a knife used to cut grass. No anesthesia or sterilization was used during the FGM, and afterwards, Ms. Bah was hospitalized with an infection, which eventually caused her to have many health problems.[2]

In 1998, while living in Guinea, Ms. Bah, her husband and her father were members of an opposition party known as "Rally of the People of Guinea" or "RPG." Ms. Bah would organize meetings, distribute T-shirts to women and attend RPG meetings. On December 14, 1998, following the presidential elections in Guinea, Alpha Conde, the leader of RPG, and several of his associates, including Ms. Bah's husband, were arrested. She has not seen her husband since. Eight days later, on December 22, 1998, soldiers came to Ms. Bah's house, destroyed the contents of her home and then proceeded to rape her.

On October 5, 2001, Ms. Bah was arrested for attending and participating at a rally in opposition to the President of Guinea. While in prison at Camp Alpha Yaya, she was again raped, this time by the commandant of the prison. With the assistance of the commandant, Ms. Bah was able to escape from prison and flee to Mali.

---

[1] "Forced female genital mutilation involves the infliction of grave harm constituting persecution on account of membership in a particular social group that can form the basis of a successful claim for asylum...Female genital mutilation, or FGM, is the collective name given to a series of surgical operations, involving the removal of some or all of the external genitalia, performed on girls and women primarily in Africa and Asia. Often performed under unsanitary conditions with highly rudimentary instruments, female genital mutilation is 'extremely painful,' 'permanently disfigures the female genitalia, [and] exposes the girl or woman to the risk of serious, potentially life-threatening complications,' including 'bleeding, infection, urine retention, stress, shock, psychological trauma, and damage to the urethra and anus.'...The practice of FGM has been internationally recognized as a violation of women's and female children's rights." *Abay v. Ashcroft*, 368 F.3d 634, 638 (6th Cir. 2004).

[2] "[T]he term 'female genital mutilation' has become the preferred generic term when describing any form of physical mutilation to a female's genitals. The term "circumcision" is considered by many to be physically inaccurate in describing the most common form of the practice, Type II (excision), which results in the complete removal of the clitoris." *Abay*, 368 F.3d at 639, n. 2.

Ms. Bah arrived in the United States at John Fitzgerald Kennedy International Airport on or about June 29, 2002. Upon leaving Guinea, Ms. Bah left behind her three children, including her eldest daughter, Hadja, who was subjected to FGM at the age of ten.

After arriving in the United States, Ms. Bah moved from New York City to Memphis, Tennessee. Ms. Bah filed her application for asylum and for withholding of removal on September 3, 2002, and on February 20, 2003, INS charged that Ms. Bah was subject to removal under Section 237(a)(1)(A) of Immigration and Naturalization Act. On September 24, 2003, Judge Charles E. Pazar ("Judge Pazar") issued his decision denying: asylum, withholding of removal, and protection under the U.N. Convention Against Torture. Aside from noting that he believed Ms. Bah had not been completely forthright in answering many questions, Judge Pazar also found that Ms. Bah failed to meet her burden of proving a clear probability of persecution, as required in order to be withheld from removal and/or receive protection under the U.N. Convention Against Torture. Ms. Bah appealed this decision to the BIA on October 22, 2003.

While awaiting a decision on her appeal, Ms. Bah gave birth to a fourth child on May 14, 2004; a daughter named Diariou. On January 18, 2005, the BIA adopted the decision of Judge Pazar, and dismissed Ms. Bah's appeal. Between May 14, 2004, and January 18, 2005, Ms. Bah did not inform the BIA about the birth of her daughter.

On April 3, 2006, Ms. Bah filed a motion to reopen her petition, contending that the birth of Diariou changed Ms. Bah's circumstances because if she were to be deported, her daughter would be subjected to FGM upon her return to Guinea. In addition, Ms. Bah argued that there would be a high likelihood that she would have to watch her daughter be subjected to FGM if Ms. Bah was forced to return with her to Guinea.

On May 2, 2006, the BIA denied Ms. Bah's motion to reopen, concluding that her motion to reopen was untimely because it was received over 90 days after the BIA's initial decision on January 18, 2005. The BIA also stated that the evidence filed with the motion was insufficient to warrant a reopening based on changed circumstances in Guinea, noting that Ms. Bah had failed to show changed circumstances in Guinea that would excuse her lack of timeliness in filing her motion to reopen.

## STANDARD OF REVIEW

This Court reviews the denial of a motion to reopen a petition for asylum for an abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 324, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992). An abuse of discretion can be shown when the BIA offers no "rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis such as invidious discrimination against a particular race or group." *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir.1982). This Court reviews legal issues *de novo*. *Harchenko v. INS*, 379 F.3d 405, 409 (6th Cir. 2004).

"The scope of review is exceedingly narrow because a lack of statutory standards provides the Attorney General with unusually broad discretion...Nevertheless, the BIA may be reversed if it fails to actually consider the facts and circumstances respecting each petitioner's claim of extreme hardship...Such a decision would be reversed as arbitrary or capricious." *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004)(quoting *Hazime v. INS*, 17 F.3d 136, 140 (6th Cir.1994) (citations omitted)). This Court may review the denial of an asylum application for untimeliness where the appeal seeks review of constitutional claims or matters of statutory construction, but it lacks jurisdiction to do so where the appeal seeks review of discretionary or factual questions. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir.2006). "Generally speaking, a court of appeals should

remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *INS v. Ventura*, 537 U.S. 12, 16 (2002).

"[T]he Board's denial of relief may be affirmed only on the basis articulated in the decision and this Court may not assume that the Board considered factors that it failed to mention in its opinion." *Daneshvar*, 355 F.3d at 626. "Motions for reopening of immigration proceedings are disfavored for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence." *Doherty*, 502 U.S. at 323 (citing *INS v. Abudu*, 485 U.S. 94, 107-08 (1988)). This Court does not review the decision of the Immigration Judge; rather, "judicial review is specifically limited to the decision of the BIA." *Hazime*, 17 F.3d at 140.

## ANALYSIS

8 C.F.R § 1003.2(c)(3)(ii) states that "changed circumstances" must arise "in the country of nationality or in the country to which deportation has been ordered" in order to excuse the time limitation within the regulation. These "changed circumstances" must relate to conditions in the country of the nationality of the applicant or in the country in which deportation has been ordered. *See Haddad v. Gonzales*, 437 F.3d 515, 517-18 (6th Cir. 2006). Without a showing of changed country conditions under 8 C.F.R § 1003.2(c)(3)(ii), an applicant is subject to the 90-day deadline for filing a motion to reopen as mandated under 8 C.F.R § 1003.2(c)(2), and the BIA may deny the applicant's motion to reopen. *Haddad*, 437 F.3d at 518.

In her Motion to Reopen filed on April 3, 2006, Ms. Bah noted 8 C.F.R § 1003.2(c)(2) as the relevant law supporting her motion to reopen. Ms. Bah claimed that she had experienced changed circumstances after she had appeared in front of the Immigration Judge that warranted granting her motion to reopen. Ms. Bah titled this section of her motion as "Respondent's Claim for Asylum is Based on Changed Circumstances." Specifically, Ms. Bah, through counsel, stated:

[Ms. Bah] gave birth to Diariou, on May 14, 2004 in Richmond, Virginia. Respondent's circumstances have changed since she made her application for asylum in the United States before the [Immigration Judge] in August 2002. At that time, [Ms. Bah's] claim was based on her involvement with a political party. [Ms. Bah] did not have a little girl born in the U.S. who could be subjected to the same type of torture [Ms. Bah] endured from FGM. Even though, [Ms. Bah] herself had been circumcised at the time, she didn't have Diariou who would be forced to undergo the same procedure if she were deported. [Ms. Bah's] fear that she would not able [sic] to protect her daughter from FGM if she returns to her country did not exist.

The changed circumstances addressed by Ms. Bah in her motion to reopen were personal circumstances because they did not deal with changed conditions in Guinea, but instead related to Ms. Bah's personal situation in the United States concerning the birth of her daughter, and the potential implications of the birth concerning her daughter's subjection to FGM upon her deportation to Guinea. *See Haddad*, 437 F.3d at 517-18.

In its one paragraph decision of May 2, 2006, the BIA denied the motion to reopen Ms. Bah's petition for asylum. Citing 8 C.F.R § 1003.2(c)(2), the BIA stated that a motion to reopen a previous final decision must be filed within 90 days after the date of the decision. In its review, the BIA noted that Ms. Bah filed her motion to reopen more than 90 days after its initial decision on January 18, 2005. Further, the BIA held that the evidence submitted in support of the motion to reopen was "insufficient to warrant reopening for consideration of asylum based on changed circumstances in Guinea." In addressing Ms. Bah's fear that her daughter may have to experience FGM should Diariou return with her to Guinea and that Ms. Bah was subjected to FGM in Guinea at age 7, the BIA held that Ms. Bah "had not shown changed circumstances which would excuse her failure to timely file the motion to reopen." In addition, the BIA noted that it made its initial decision on January 18, 2005, and Ms. Bah's daughter was born on May 14, 2004.

The BIA did not abuse its discretion in finding that Ms. Bah did not show "changed circumstances" under 8 C.F.R § 1003.2(c)(2)(ii) that would excuse her failure to file within 90 days

because Ms. Bah did not allege changed circumstances in Guinea, but instead put forth changed personal circumstances here in the United States. In addition, Ms. Bah knew of her changed personal circumstances at the time the BIA made its initial decision on January 18, 2005, yet she did not file her petition to reopen until well past the 90 day deadline. In its order, the BIA provided a rational explanation for its decision and properly considered the facts related to Ms. Bah's claim. Accordingly, the BIA did not abuse its discretion when reviewing Ms. Bah's motion to reopen her asylum application.

## CONCLUSION

For the reasons set out above, we **DENY** the petition for review.