NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0685n.06
Filed: November 6, 2008

No. 07-3805

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MICHEL NIYIBIZI, ESPERANCE NIYIBIZI, AUGUSTE NIYIBIZI, and OLGA NIYIBIZI, | ) ) ) | |
| | ) | **ON PETITION** FOR REVIEW |
| **Petitioners-Appellants,** | ) | OF AN ORDER OF THE |
| | ) | BOARD OF IMMIGRATION |
| MICHAEL B. MUKASEY, United States Attorney General, | ) ) | APPEALS |
| | ) | **O P I N I O N** |
| **Respondent-Appellee.** | ) | |

Before: BOGGS, Chief Judge; and MOORE and CLAY, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Petitioners, Michel Niyibizi ("Michel"), Esperance Niyibizi ("Esperance"), Auguste Niyibizi ("Auguste"), and Olga Niyibizi ("Olga") (referred to jointly as "the Niyibizis"), seek review of the denial by the Board of Immigration Appeals ("BIA") of their motion to reopen their removal proceedings. The Niyibizis argue that the BIA abused its discretion in finding that their untimely motion to reopen was not excused by changed country conditions. For the reasons explained below, we **GRANT** the petition for review and **REMAND** to the BIA for consideration on the merits.

## I. FACTS AND PROCEDURE

The facts of this case are undisputed. Michel, his wife Esperance, and their two children, Auguste and Olga, are citizens of Rwanda. Michel entered the United States on May 30, 1997, on

a non-immigrant student visa. At some point, Esperance, Auguste, and Olga followed him to the United States. Shortly after Michel arrived, on September 7, 1997, he filed an application for asylum and withholding of removal for himself with the Immigration and Naturalization Service ("INS")[1] He claimed that he had a well-founded fear of persecution in Rwanda based on: (1) his mixed HutuTutsi ethnicity and (2) his affiliation with various groups in Rwanda. His application was denied. On December 14, 1997, Michel was served with a Notice to Appear ("NTA"), which stated that he was removable under 8 U.S.C. § 1227(a)(1)(B) (2000). He filed a second application for asylum on July 2, 1999, reiterating his previously denied claims.

Esperance filed a separate asylum application for herself, Auguste, and Olga on September 2, 1999. On December 14, 1999, this application was referred to the immigration court. The INS issued NTAs to Esperance and the children. The Niyibizis then filed a joint third application on May 26, 2000, for asylum, withholding of removal, and relief under the Convention Against Torture, which reiterated the claims Michel made in his previous applications.

Ultimately, after a two-day hearing, the immigration judge ("IJ") denied the Niyibizis' application. The IJ specifically found that both Michel and Esperance lacked credibility. The IJ ordered that the Niyibizis be removed. This decision was appealed to the BIA on November 10, 2004.

While the appeal to the BIA was pending, the U.S. Department of Justice, beginning in 2005, used Michel as an interpreter and translator in a highly publicized terrorism prosecution, *United States v. Karake,* 443 F. Supp. 2d 8 (D.D.C. 2006). Members of the Armed Forces for Liberation for

---

[1]The INS was replaced by the Department of Homeland Security's Bureau of Immigration and Customs Enforcement and Bureau of Citizenship and Immigration Services in 2003.

Rwanda ("ALIR"), an extremist Hutu group, were prosecuted.[2] 2 The court found that the Tutsi Rwandan government had subjected the defendants to "solitary confinement, positional torture, and repeated physical abuse" to extract confessions. *Id.* at 94. This finding led the court to suppress the confessions of the defendants, *see id.,* which ultimately led to an unsuccessful prosecution.

Meanwhile, the BIA affirmed the IP s decision on February 1, 2006, and entered a final order of removal, specifically finding that the IF s adverse credibility finding was not clearly erroneous. The Niyibizis did not appeal. However, on January 16, 2007, the Niyibizis filed a motion to reopen removal proceedings, accompanied by a new application for asylum. This application was based on a claim of changed country conditions. Specifically, the Niyibizis argued: (1) because Michel aided the U.S. Department of Justice in its failed attempt to prosecute ALIR members that uncovered the fact that the Rwandan government tortured individuals, the Niyibizis now have a well-founded fear of future prosecution by either the ALIR or the Rwandan government; and (2) French/Rwandan diplomatic relations had completely deteriorated and any suspected French sympathizers, like the Niyibizis, would be in danger in Rwanda.[3] On May 31, 2007, the BIA denied the motion to reopen, finding the motion untimely and that the Niyibizis failed to show changed country conditions. Specifically, the BIA stated:

---

[2]Three members of the group were charged in "a four-count indictment relating to the March 1, 1999 killings of two American tourists in Bwindi Impenetrable National Forest . . . in southwestern Uganda." *Karake*, 443 F. Supp. 2d at 12.

[3]The Niyibizis claim that, in November, 2006, the Rwandan government severed all diplomatic relations with France and sponsored anti-French protests. This was in response to a French magistrate issuing an international arrest warrant for Rwandan government officials in relation to the shooting down of former Rwandan President Juvenal Habyarimana's plane. Because we will not reach this claim, discussed below, we will not determine the validity of these facts.

[A] motion to reopen may be filed beyond the 90-day limit based on evidence of changed country circumstances, [but] the respondents have presented no persuasive evidence showing such changed circumstances in Rwanda.

Further, and even more importantly, the new evidence does not elevate the respondents' claim for relief to one of credibility.

J.A. at 5 (BIA Dec. 5/31/07). The Niyibizis timely appealed.

## II. ANALYSIS

We review the denial of a motion to reopen proceedings for an abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 323 (1992); *Alizoti v. Gonzales,* 477 F.3d 448, 451 (6th Cir. 2007) (citing *INS v. Abudu*, 485 U.S. 94, 96 (1988)). An abuse of discretion occurs when "the denial of [the]motion to reopen . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against aparticular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)) (addition and omission in *Allabani*). When determining whether the BIA abused its discretion, we may look only at "the basis articulated in the decision and . . . may not assume that the [BIA] considered factors that it failed to mention in its opinion."*Daneshvar v. Ashcroft,* 355 F.3d 615, 626 (6th Cir. 2004). We review legal determinations made by the BIA de novo. *Harchenko v. INS*, 379 F.3d 405, 409 (6th Cir. 2004).

An applicant for asylum has ninety days from "the date of entry of a final administrative order of removal" in which to file a motion to reopen removal proceedings. 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). However, there is no time limit to file a motion to reopen proceedings "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered. . . ." 8 U.S.C. § 1229a(c)(7)(C)(ii); *accord* 8 C.F.R. § 1003.2(c)(3)(ii).

4

The motion must be accompanied by "such evidence [that] is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); *accord Allabani*, 402 F.3d at 675 (noting that an untimely motion to reopen proceedings "shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing") (internal quotation marks omitted). Evidence of changes in personal circumstances, not accompanied by a change in country conditions, is not sufficient to support an untimely motion to reopen. *See Haddad v. Gonzales,* 437 F.3d 515, 517-18 (6th Cir. 2006) (holding that divorce in this country was a personal decision that did not constitute a changed country condition in Jordan); *Bah v. Gonzalez*, 230 F. App'x 547, 550 (6th Cir. 2007) (unpublished opinion) (holding that giving birth to a female child in this country who may be subjected to genital mutilation upon return to Guinea was a changed personal circumstance); *Vuthi v. Gonzales*, 209 F. App'x 470, 473 (6th Cir. 2006) (unpublished opinion) (holding that an applicant's fear of her husband's "ill will. . . based on her younger son's death and her older son's imprisonment" was a change in personal circumstances, not a change in the country conditions of Albania); *Zheng v. United States Dep't of Justice*, 416 F.3d 129, 130-31 (2d Cir. 2005) (holding that arriving in this country while pregnant in violation of China's population control policies was a change in personal circumstances); *Guan v. B.I,A.*, 345 F.3d 47 (2d Cir. 2003) (same). Further, the evidence must show that the change in country conditions has caused an individualized threat of harm to the applicant. See Harchenko, 379 F.3d at 410 (stating that an alien must provide "reasonably specific information showing a real threat of individual persecution").

5

It is undisputed that the Niyibizis filed their petition to reopen after the ninety-day filing deadline. Thus, in order to gain relief, the motion must be supported by material evidence of changed country conditions that was not available at the time of the prior proceedings. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003 .2(c)(3)(ii). The BIA held the Niyibizis' motion to be untimely, stating that they had "presented no persuasive evidence" of changed country conditions. We find that the BIA abused its discretion in coming to this conclusion.

The Niyibizis claim two changes to the county conditions of Rwanda: (1) Michel worked as a translator for the U.S. Department of Justice in a highly publicized prosecution of three members of the Hutu ALIR, a prosecution that revealed that Rwandan government officials engaged in the torture of Hutus; and (2) a rapid and dramatic deterioration of diplomatic relations between Rwanda and France occurred. We agree with the Niyibizis' first claim; Michel's work as a translator for the United States government in a high-profile terrorism case, coupled with the information about the Rwandan government torturing the defendants in that case, constitutes a changed country condition sufficient to support the motion to reopen proceedings.[4]

The Attorney General ("AG") argues that Michel's work as a translator was an "employment decision" and, citing the above-mentioned cases, contends that such a decision constitutes a change only to his personal circumstances, which cannot support an untimely motion to reopen proceedings. Government Br. at 22-23. However, the AG misunderstands both our precedent and the Niyibizis' claim. Michel does not claim a *purely* personal change, but rather a personal change coupled with a change in country conditions. This is not a situation that the above-cited cases address. In every

---

[4]Because we find a changed country condition in regard to Michel's work and the revelations about torture, we do not reach the issue of whether the demise of French/Rwandan relations would constitute changed country conditions.

one of those cases, the *only* changed condition that the petitioner raised was a change in the petitioner's circumstances. For instance, in *Haddad*, Jordan's views of divorce did not change, only the petitioner's marital status changed; thus, we appropriately denied the petition for review that was based solely on the petitioner's divorce. *Haddad*, 437 F.3d at 517-18. Similarly, there was no allegation in *Zheng or Guan* that China's one-child policy had changed or in *Bah* that female genital mutilation was a recent development in Guinea. These cases dealt solely with a static country condition that would now affect the applicant due to a personal choice the applicant made while in this county.

The case before us, however, is quite different. Not only did the *Karake* case reveal that the Tutsi goverment which came to power in Rwanda after the 1994 genocide also tortures individuals, specifically the defendants in that case, but the case did so with the open assistance of Michel acting as a translator for the U.S. prosecution. This evidence is sufficient to demonstrate changed country conditions because it reveals disturbing new information about the Rwandan government's abusive treatment of prisoners, and tends to indicate a more pervasive lack of respect for basic rights. See 443 F. Supp. 2d at 54-59 (recounting "horrifying stories regarding [the Rwandan government's] use of physical and psychological torture"). The district court's findings in the *Karake* case thus provide material evidence of changed country conditions in Rwanda that was not available at the time the Niyibizis filed their initial application for asylum, as the Karake case involved events that took place "primarily between 1999 and 2003," *id*. at 15, and the district court's opinion was not issued until August of 2006. Furthermore, the fact that Michel was personally involved in exposing the Rwandan government's use of torture has likely earned him few friends in the Rwandan government. He therefore can show an individualized threat of harm, given his unique position as a U.S.

7

government translator in a case that exposed Rwanda's human-rights violations. Thus, the Niyibizis' claim satisfies the changed country conditions requirement and supports the motion to reopen proceedings.

Further, the BIA denied the Niyibizis' motion without giving a "rational explanation." *Allabani*, 402 F.3d at 675. The BIA opinion states: "[The respondents have presented no persuasive evidence showing such changed circumstances in Rwanda. Further, and *even more importantly*, the new evidence does not elevate the respondents' claim for relief to one of credibility." J.A. at 5 (BIA Dec. 5/31/07) (emphasis added). Because we can look only to what the BIA said in its opinion in determining if there has been an abuse of discretion, *see Daneshvar*, 355 F.3d at 626, we must assume the BIA relied heavily on the earlier finding that the Niyibizis were not credible. This reliance was in error; the Niyibizis' credibility at the earlier hearing before an IJ has no bearing on the current claim for relief The Niyibizis do not seek asylum for the reasons originally rejected by the BIA; rather, they seek asylum based on the current changed country conditions regarding Rwanda. The evidence supporting this new claim is not testimonial evidence from Michel himself, but rather the United States district court's findings in Karake and several letters from various U.S. Department of Justice officials. Therefore, the Niyibizis' credibility is not at issue in this new claim and should not have been relied on by the BIA when denying the motion to reopen.[5] Further, the facts that were in issue, whether there were changed conditions in Rwanda, were summarily

---

[5]For the same reason, the AG's argument that the Niyibizis cannot overcome the adverse credibility finding of the original IJ and, therefore, cannot demonstrate prima facie eligibility for the underlying relief sought must also fail. As stated above, the credibility of the Niyibizis is not an issue in this proceeding because the evidence supporting the new asylum application is not based on testimony of the Niyibizis.

dismissed by the BIA in one quick sentence, completely lacking any explanation. Thus, we hold that the BIA's decision to deny the motion to reopen was an abuse of discretion.

As to the issue of credibility, it is deeply troubling how cavalierly the U.S. government cast aside the personal risks that Michel assumed in order to assist our country in its prosecution of terrorists who took American lives in a brutal and callous fashion. Indeed, the Joint Appendix includes letters from Assistant U.S. Attorney Brenda J. Johnson dated September 2, 2005, October 6, 2005, and December 7, 2005, each requesting that Michel travel to Washington, D.C. and assist in the *Karake* case, observing that Michel would "meet with prosecutors to discuss matters relating to the [*Karake*] case," and noting that Michel would be contacted by a representative of the U.S. Department of Justice's "Victim Witness Assistance Unit." J.A. at 21-25.

More troubling is that the same Department of Justice that trusted Michel to work on a sensitive terrorism case in 2005-06 claims that Michel is not credible enough to remain in the United States. Assistant U.S. Attorney Jonathan M. Malis wrote on November 29, 2006, that the U.S. government was "dismayed to learn that Mr. Niyibizi[] is experiencing the immigration difficulties" he was facing. J.A. at 18. AUSA Malis noted "[Michel] Niyibizi's important service to the government in [*the Karake*] case," that "[Michel] Niyibizi has provided valuable assistance to the government in the prosecution of the [*Karake*] case, . . . translated numerous documents from Kinyarwanda into English[,] [and] served as an interpreter for the government during meetings, witness interviews, and court appearances." *Id*. In sum, AUSA Malis wrote, "we came to rely heavily on [Michel] Niyibizi for his language skills." *Id*. Although IJ Robert Newberry, in his oral decision of October 18, 2004, had deemed Michel not credible and had said Michel's "story is completely made up," referring to Michel's request for asylum and withholding of removal, J.A. at

9

319 (IJ' s Oral Dec. 10/18/04), nonetheless the U.S. Department of Justice relied within one year's time on Michel's truthfulness as an interpreter. And after the Department of Justice began relying on Michel's veracity and ability to interpret for the U.S. prosecution in the 2005-06 Karake terrorism proceedings, the BIA affirmed the IF s denial of asylum on February 1, 2006, holding that "the Immigration Judge's adverse credibility finding is not clearly erroneous." J.A. at 267 (BIA Dec. 2/1/06). The BIA then on May 31, 2007 denied the Niyibizis' motion to reopen on grounds of untimeliness.

The position the AG asks this court to take in this case would require this court to stamp with approval one of two realities. Either the U.S. government has permitted an individual who is so untrustworthy as to require removal from the United States to translate documents and witness testimony for the government in a critical terrorism case, or the U.S. government has sent a message that this country treats very poorly those who would risk their lives to help us pursue terrorists. Neither reality is one we are willing to endorse.

### III.  CONCLUSION

For these reasons, we **GRANT** the petition for review and **REMAND** to the BIA with the direction that it consider on the merits the Niyibizis' motion to reopen.

**BOGGS, Chief Judge, dissenting.** Rwanda is a country with a tragic and tortured past, and an uncertain and unpleasant present. It is understandable that persons such as Mr. Niyibizi would want to get out and be in United States. The Nyizibizis did, and tried to stay here with a story that was found not credible, a decision that was affirmed at every level.

Nevertheless, he was not a bad person – he had skills – and the United States sought to use those skills in a laudable endeavor to prosecute those responsible for murders of Americans (while sparing Frenchmen) in Rwanda.

Quite probably, in my opinion, that service ought to merit him favorable consideration in one of the many ways that the United States government and Attorney General can provide it, in letting him stay, in recompense. However, that's an "ought" – that's not law. So, in this case we have to look at law.

In considering whether Niyibizi has demonstrated "changed country conditions," we have to be clear as to who is on what side. The Rwandan government wanted to punish the alleged murderers; so did the United States; so did, apparently, Niyibizi – that's the side he was helping.

Unfortunately for all on that side, the United States district court didn't agree with their case – it made findings (over vociferous objections of the Department of Justice, the side Niyibizi was helping), that were deeply embarrassing to the Rwandan government. *See United States v. Karake*, 443 F. Supp. 2d 8, 62-86 (reviewing the accounts of torture and abuse by the Rwandan government

11

and concluding "the conditions under which defendants were held . . . the abuse and mistreatment they endured while being interrogated shock the conscience").

So, with that background, let's examine the claim of changed country conditions.

At some points, it appears that the changed conditions cited by the majority is that "we" now know that the Rwandan government tortures some people (or at least that one United States court says so). There is no indication that these events, lamentable as they may be, which occurred over a 15-month period from 2001 to 2003, are really "changed" from the time the Niyibizis' first application was decided in 2004. Nor is there any indication that any general changes are relevant to him personally.

Indeed, the State Department Country report from 2000 (the one that would have been relevant at the time of the application) indicates that prison conditions were harsh and torture used. These are the same revelations as in *Karake*. Each country report between 2001 and 2004 also made similar claims, with reports of torture increasing and decreasing but there is a baseline of tough conditions, and "credible" allegations of torture against both prison officials and soldiers. If anything, there is steady improvement with less harsh language used toward the middle of the 2000s.

Even if this does constitute a change in country conditions, it is not explained why it is material to Niyibizi's asylum application. For example, if Nazi Germany "changed" conditions by persecuting Buddhists as well as Jews, that would be a changed condition for Buddhists, but would

12

not affect the ability of atheists to reopen an asylum application because their individual risk of persecution would remain unchanged. Niyibizi is not thought to be a murderer or in any way associated with the anti-government forces found tortured in *Karake* – in fact, he was helping to prosecute them.

At other points, and more plausibly, there is an intimation that the failure of the prosecution and the embarrassment of the Government of Rwanda by the holding of a federal judge would redound to the personal detriment of Niyibizi – a "when the team loses, you fire the coach" philosophy.

But that is the epitome of a personal change in condition.

I think precedent and legal structure compel us to find no abuse of discretion here – and urge the Attorney General to look at this case and use some part of his voluminous arsenal of discretion to permit Niybizi to stay for his services to our country and system of justice.

The logic of the court's charge that the BIA decided without "rational explanation" is weak. The BIA clearly says that there is no evidence of changed conditions – and it is right. By adding a word on credibility, which the court now finds fatal, it did no more than note that nothing in the new application added to the credibility of personal danger against Niyibizi.

Finally, with regard to the comment as to the "troubling" government action by the BIA's decision, or the government lawyers' defense of it, I would think it quite the opposite. It would be much more troubling if the Department of Justice's relatively independent BIA, or the government lawyers charged with defending the BIA's decision, could be pressured by Department of Justice prosecutors, because of Niybizi's assistance, to "fix" a BIA decision directly, or now "throw" this appeal. There is, to be sure, tension between the use of Niyibizi as a translator and the finding that he was not credible. But these are not mutually exclusive "realities" – people, especially people that are in extremely high stakes situations (staying or leaving the United States for a dangerous home country), sometimes lie or fabricate because of the stress of the situation or the horror of the alternative to their desired outcome. The IJ felt that was the case here. Those people are not always universally untrustworthy or bad people – and, indeed, Niyibizi proved to be neither, admirably helping our government and his government in the failed prosecution in *Karake* – and this court does not need to pretend this is so. A denial of this petition for review would not put the imprimatur of our court on an alleged impropriety by the Justice Department, it would only insist that when asylum applications are reviewed, we emphasize the legal requirements of the Immigration and Naturalization Act. Again, it is my hope the Attorney General exercises his discretion in favor of Niyibizi, but that hope should not alter the stringent requirements for reopening a failed asylum application.