NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0384n.06
Filed: June 12, 2007

Case No. 05-3691

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| ABOUBACAR DEM, ) | |
| ) | |
| Petitioner-Appellant, ) | |
| ) | ON APPEAL FROM THE |
| v. ) | BOARD OF IMMIGRATION |
| ) | APPEALS |
| ALBERTO GONZALES, Attorney General, ) | |
| ) | |
| Respondent-Appellee. ) | |
| ) | |
| _____ ) | |

BEFORE: BATCHELDER and MOORE, Circuit Judges; COHN,[*] District Judge.

**ALICE M. BATCHELDER, Circuit Judge.** Aboubacar Dem petitions for review of the decision of the Board of Immigration Appeals (BIA), which affirmed the decision of the Immigration Judge (IJ) denying his request for asylum and withholding of removal. We affirm.

**I.**

Dem arrived in New York on April 5, 2000, bearing a Senegalese passport with the name "Aboubakry Bene." He was admitted to remain until July 4, 2000. On May 29, 2001, the former Immigration and Naturalization Service (INS)[1] issued him a Notice to Appear before an Immigration Court on the charge that he had remained in the United States beyond his authorization. Removal

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

[1]On March 1, 2003, the functions of the former Immigration and Naturalization Service were transferred from the Department of Justice to three agencies within the newly formed Department of Homeland Security (DHS). *See* Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

proceedings were held on December 29, 2003, during which Dem conceded removability, but sought asylum and withholding of removal. He claimed that his name is actually "Aboubacar Dem," that he is a native and citizen of the Republic of Guinea (Africa), and that he will be persecuted for his political affiliations if he is returned to Guinea. The IJ denied Dem's application and ordered him removed. The BIA adopted and affirmed the IJ's decision on May 12, 2005. Dem petitioned this court for review.

According to Dem, he is a member of the Rassemblement du Peuple de Guinee (RPG), a political party that opposes the current government in Guinea. His affiliation with the party was through a friend, Mamadou Barry, his entire knowledge of the RPG was from Barry, and his role was to recruit and organize young people. On December 14, 1998, an RPG candidate lost a bid for the presidency in a disputed election. This RPG candidate was then arrested, which prompted demonstrations by the RPG. Dem was allegedly arrested during the demonstrations and was imprisoned for 15 months. While in prison he was questioned and beaten. Eventually, his family bribed certain officials so that he could escape. He fled with his wife to Senegal, where he paid a smuggler to take him to the United States. His wife remained in Africa, although he lost contact with her in 2001. He asserts that he will be killed if he returns to Guinea.

The IJ concluded that Dem was not credible; even if credible, Dem did not meet his burden of establishing persecution; and Dem was not eligible for withholding or voluntary departure. In finding Dem not credible, the IJ cited a fraudulent, "obviously-photo-substituted" RPG membership card that Dem had submitted as well as certain inconsistencies between Dem's application for asylum and his testimony at the hearing. The IJ also reasoned from Dem's testimony that he "knows precious little about the RPG," which belied Dem's claim of persecution on account of his political

opinion. The IJ's decision cited additional curiosities, such as Dem's lack of interest in his friend Mamadou Barry, his contradictory statements and apparent confusion over the whereabouts of his wife, his ignorance of Guinea and its politics, and the peculiarly evasive wording of a letter from the RPG embassy in New York.

The BIA adopted and affirmed the IJ's decision, but stated: "No single concern would lead us to conclude that [Dem's] story is untrue. However, the constellation of problems identified by the [IJ] leads us to agree that [Dem] has not met his burden . . . ." The BIA concluded: "When coupled with the absence of objective documentary evidence to corroborate his claim, we conclude that [Dem's] testimony, as well as the evidence he presented, is insufficient to provide a plausible and coherent account of the basis of his fear."

## II.

This court's review is confined to the administrative record, *see Denko v. INS*, 351 F. 3d 717, 730 (6th Cir. 2003), on which the order of removal was based, and "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(A)&(B) (codifying the substantial evidence standard set forth in *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). However, a discretionary decision to deny asylum under 8 U.S.C. § 1158 "shall be conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

Under the substantial evidence standard, this court must affirm the BIA's decision if the record as a whole contains reasonable, substantial, and probative evidence sufficient to support the decision. *Mullai v. Ashcroft*, 385 F.3d 635, 638 (6th Cir. 2004). This court may not reverse simply because it would have decided the case differently; it may reverse the IJ's or BIA's factual

3

determinations only if the evidence *compels* a different conclusion. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004); *Elias-Zacarias*, 502 U.S. at 483-84 ("[T]o obtain judicial reversal of the BIA's determination, [the petitioner] must show that the evidence he presented was so compelling that *no reasonable fact finder could fail to find* the requisite fear of persecution." (emphasis added)).

Credibility determinations are findings of fact and are reviewed for substantial evidence. *Yu*, 364 F.3d at 703. However, the court must still subject them to "meaningful judicial review." *Nwakanma v. Gonzales*, 126 Fed.Appx. 699, 700 (6th Cir. 2005) (unpublished). A finding that an applicant is not credible "must be based on issues that go to the heart of the applicant's claim," and discrepancies may not bear on credibility unless they can "be viewed as attempts by the applicant to enhance his claims of persecution." *Daneshvar v. Ashcroft*, 355 F.3d 615, 619 n.2 (6th Cir. 2004).

Dem was obligated to prove three elements: (1) a well-founded fear of persecution, (2) in his home country, (3) due to his political beliefs. "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. §§ 208.13(a) & 208.16(b). Credible means "the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account." *Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir. 1994). The obvious corollary is that corroboration is necessary if the testimony of the applicant does *not* appear credible. "[W]here it is reasonable to expect corroborating evidence . . . [t]he absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof." *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) (quotation omitted). However, in the usual case, even such "supporting documentation must be provided only if it is of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers." *Id.* at 382-83.

4

The IJ concluded that Dem was not credible, due to inconsistencies in his story, an inability provide detail, and lack of authentic corroboration. *See Perkovic*, 33 F.3d at 621. The inconsistent and ambiguous answers went to "the heart of the applicant's claim," and were attempts "to enhance his claims of persecution." *See Daneshvar*, 355 F.3d at 623. For example, Dem's hearing testimony contradicted his prior accounts of his imprisonment, the bribery that facilitated his escape, and his wife's plight after he fled Senegal for the United States. Dem stated that he was taken to an unknown prison for three days before being sent to Camp Alpha Yaya for the next 15 months, but also, that he was taken first to Camp Alpha Yaya before being sent to an unknown prison. Similarly, Dem stated that his parents bribed the commandant 1.5M Guinean francs and four soldiers led his escape, but later stated that his wife and uncle bribed a police captain 1M francs and two police officers led his escape. Dem testified variously that his wife stayed in Senegal after he left, that she returned immediately to Guinea, that she went to Ivory Coast (where she may or may not have relatives), and that she went to Guinea and then to either Senegal or Ivory Coast, either despite or because of her fear.

Dem was apparently as disinterested in as he was uninformed about his wife's current whereabouts. He appeared similarly unconcerned for the whereabouts of his friend, Mamadou Barry. He could provide only vague explanations about RPG, its organization, or its platform, offering only that it was in favor of progress and against corruption. He did not even know its proper name. He also appeared to know little about Guinea's politics or political parties. As corroboration for his political affiliation, Dem offered an RPG party membership card and a letter from the RPG's Secretary General in New York. The membership card was discovered to be fraudulent, with Dem's picture substituted over an existing seal. The embassy letter conspicuously stated that Dem "is *now*

5

a member of the RPG New York," and "We *believe* that Mr. Dem was detained and tortured."

"[S]ubmission of a fraudulent document in support of a key element of an asylum claim is sufficient to support an adverse credibility determination." *Selami v. Gonzales*, 423 F.3d 621, 625 (6th Cir. 2005) (listing cases). However, "if the applicant has no reason to know that the document is forged, its existence does not undermine his credibility, though it deprives his testimony of the extra boost to credibility that it would have if it were corroborated." *Id.* at 626 (*quoting Kourski v. Ashcroft*, 355 F.3d 1038, 1040 (7th Cir. 2004)). Dem argues that he did not prepare the RPG membership card, that he merely provided a picture, and he had no reason to suspect that it was forged. He argues that the adverse credibility determination cannot turn on this card.

Ultimately, Dem claims that the discrepancies in his evidence are minor or immaterial (i.e., that the nature of his imprisonment and circumstances of his escape do not enhance his claims of persecution) and that each can be attributed to the language barrier and the difficulties inherent in the application process. Taken in isolation and succession, each inconsistency might be explained or excused, so that without considering the testimony as a whole, an IJ may seem to have been unjustified in deeming him not credible. Under such an approach, one's ability to explain, excuse, or rationalize any flaw in a petitioner's testimony is limited only by the determination to do so. *See*, *e.g.*, *Secaida-Rosales v. INS*, 331 F.3d 297 (2d Cir. 2003) (laboriously explaining away inconsistencies, issue by issue); *Gao v. Ashcroft*, 299 F.3d 266 (3d Cir. 2002) (same); *Dosa v. Gonzales*, 143 Fed. Appx. 674, 677-83 (6th Cir. 2005) (Boggs, C.J., dissenting) (same). However, this dissection of the testimony denies the IJ the opportunity to diagnose incredibility from all of its cumulative symptoms, and similarly departs from the deferential substantial evidence standard of review, which otherwise dissuades reviewing courts from engaging in elaborate and detached second

6

guessing of the IJ's first-hand credibility determinations and factual decisions.

Dem provides a theory to support his view of the testimony — namely, that the language barrier and the difficulties it caused in completing his application explain the discrepancies and inconsistencies in the testimony and the record. But it is not sufficient for Dem to maintain that his theory "may be true" or is "more likely to be true." Dem must demonstrate that the language barrier and the difficulties in completing his application are so clearly the cause of the discrepancies as to *compel* the conclusion that his testimony is credible. *See Yu*, 364 F.3d at 703; *Elias-Zacarias*, 502 U.S. at 483-84; *Zeito v. Gonzales*, 152 Fed. Appx. 496, 501 (6th Cir. 2005) (unpublished). Admittedly, this is a high threshold, but we are not at the stage of first impression, where the finder of fact is open to persuasion; we are at the review stage and our review is expressly limited.

After thoroughly reviewing the record, we cannot conclude that Dem has met this standard. Even if we believed that Dem's language difficulties were likely the cause of his inconsistencies, we cannot say that the record *compels* this conclusion. *See*, *e.g.*, *Singh v. Ashcroft*, 398 F.3d 396 402-04 (6th Cir. 2005) (upholding an IJ's adverse credibility determination notwithstanding the IJ's reliance on several questionable assumptions and conclusions); *Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004) (affirming an adverse credibility finding because the petitioner's "testimony plausibly could be viewed as incredible, and certainly could be viewed as inconsistent or incoherent").

## III.

Because we find the IJ's decision is supported by substantial evidence, we **AFFIRM** the IJ's decision and the affirmance by the BIA.

7

**KAREN NELSON MOORE, Circuit Judge, concurring.** While I agree with the bulk of Judge Batchelder's well-reasoned opinion, I write separately to highlight an area where we diverge slightly. Judge Batchelder expresses concern that an appellate court's piecemeal consideration of asserted inconsistencies in the petitioner's testimony before the IJ may "den[y] the IJ the opportunity to diagnose incredibility from all of its cumulative symptoms[] and similarly depart[] from the deferential substantial evidence standard of review." Maj. Op. at 6. But (as Judge Batchelder notes) under that standard, we reverse an IJ's adverse credibility determination only if the record *compels* the conclusion that the petitioner was credible. *Bah v. Gonzales*, 462 F.3d 637, 640 (6th Cir. 2006) (quoting 8 U.S.C. § 1252(b)(4)(B)).

As I see it, appellate courts must assess individually each asserted instance of incredibility to determine accurately whether the record compels such a conclusion. Courts, including this one, have made such individualized assessments without diluting the substantial-evidence standard. *See, e.g.*, *Bah*, 462 F.3d at 640-42 (considering each purported discrepancy individually and concluding that "[t]he IJ's determination that Bah lacked credibility was not based on overwhelming evidence; however, Bah has not met the 'high standard of *compelling* a contrary result.'" (citation omitted)); *Vasha v. Gonzales*, 410 F.3d 863, 869 (6th Cir. 2005) ("though several of the inconsistencies identified by the IJ were unsupported and the implausibilities were based on mere speculation, we conclude that review of the record as a whole does not compel a contrary result"); *Singh v. Ashcroft*, 398 F.3d 396, 402 (6th Cir. 2005) ("Although this is a close case and several of the grounds upon which the IJ relied are somewhat questionable, we conclude that the evidentiary record does not compel a finding that Singh's testimony was credible with respect to his INA-based claims for asylum and withholding of removal."); *Shmyhelskyy v. Gonzales*, 477 F.3d 474, 479-81 (7th Cir.

8

2007) (considering inconsistencies seriatim and concluding that the evidence did not compel reversal of the IJ's credibility determination); *Don v. Gonzales*, 476 F.3d 738, 741-43 (9th Cir. 2007) (same). I trust my colleagues on the bench to continue to employ this analysis and to apply the proper standard. Accordingly, I see no reason to discourage future panels of this court from carefully reviewing administrative records in this fashion.