**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0370n.06

Case No. 08-3235

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**May 26, 2009**
LEONARD GREEN, Clerk

| | |
|---|---|
| ROCHENEL PETIT JACQUES, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| | ) ON APPEAL FROM THE |
| v. | ) BOARD OF IMMIGRATION |
| | ) APPEALS |
| ERIC H. HOLDER, JR., UNITED STATES | ) |
| ATTORNEY GENERAL, | ) |
| | ) |
| Respondent. | ) |
| | ) |
| _____ | ) |

**BEFORE:  BATCHELDER, DAUGHTREY, and MOORE, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.**  Rochenel Petit Jacques seeks review of an order of the Board of Immigration Appeals ("BIA") affirming the immigration judge's denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  The immigration judge ("IJ") based his decision on his finding that Jacques was not credible.  The BIA did not expressly adopt that finding; it held that even if Jacques had been found credible, he had failed to establish past persecution or a well-founded fear of persecution countrywide.  Because Jacques's credibility is crucial to the question of whether he qualifies for the relief requested, we **GRANT** his petition for review and **REMAND** the case to the BIA to review the IJ's adverse credibility determination.

1

## I.

Jacques is a citizen of Haiti who claims that he was an active member of the Lavalas political party. According to Jacques, on February 17, 2005, members of a rival political party known as "Group 184" or "The Convergence" invaded his home while he was away and assaulted his mother and killed his brother Patrick, also a Lavalas member. Jacques testified that as he was traveling home that day, he was stopped by neighbors who told him about his brother's murder. The neighbors warned that the attackers had taken a photograph of Jacques from the house and had announced that they had already killed one brother and would do the same to Jacques. Jacques testified that he immediately fled to Jacmel, Haiti, where he stayed for three or four days with a friend. He further testified that he left Jacmel for the Dominican Republic, and then traveled to St. Thomas, where an individual named Marozo helped him complete an asylum application. Jacques claims he entered the United States on March 7, 2005.

On March 14, 2005, Jacques filed his application for asylum, withholding of removal, and CAT relief. After an asylum officer denied the application, the Department of Homeland Security served Jacques with a Notice to Appear. After hearings in which Jacques conceded removability and renewed his requests for relief, the IJ found that Jacques was "not credible at all," denied all of his claims, and ordered him removed to Haiti. Jacques appealed to the BIA, which affirmed the IJ's decision. This appeal followed.

## II.

When the BIA expressly affirms the IJ's decision but adds its own comments, we review both the IJ's decision and the BIA's additional comments. *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005). Here, the BIA added comments regarding the merits of Jacques's persecution claims without

2

expressly affirming the IJ's adverse credibility determination. The BIA held that "[e]ven if [Jacques] had been found credible, [he] failed to establish that he suffered past persecution, as he was never physically harmed or even directly threatened in Haiti" and that he "failed to show a well-founded fear of persecution countrywide[.]" From this comment, we cannot tell if the BIA's no-persecution finding was in addition to or in lieu of the IJ's finding that Jacques was not credible.

The credibility finding goes to the heart of Jacques's claim that he has a well-founded fear of persecution if he returns to Haiti. If his brother was not killed by a political opposition group, or if Jacques was not threatened based on identifiable political connections, he has not shown past persecution or a well-founded fear of future persecution. On the other hand, if Jacques is telling the truth, his persecution claims merit a closer look than the BIA afforded in its one-paragraph decision.

A request for asylum triggers a two-step inquiry: the BIA must determine (1) whether the applicant qualifies as a refugee as defined in 8 U.S.C. § 1101(a)(42); and (2) if so, whether the applicant merits an exercise of discretion on his behalf. *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (citing *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir.2003)). A refugee is defined as "an alien who is unable or unwilling to return to his country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1101(a)(42)). An applicant for asylum, therefore, must prove "that he has suffered past persecution or has a well-founded fear of future persecution." *Yu*, 364 F.3d at 703; *see also Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir.1994).

We have defined "persecution" to require "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or

3

significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). "[P]ersistent death threats and assaults on one's life, family, and business[,]" however, do "rise to the level of persecution within the meaning of the Act." *Ouda*, 324 F.3d at 454 (quoting *Andriasian v. INS*, 180 F.3d 1033, 1042 (9th Cir. 1999)). "Persecution can include threats to life and economic restrictions so severe that they constitute a real threat to life or freedom." *Id.* (quoting *Li Wu Lin v. INS*, 238 F.3d 239, 244 (3d Cir. 2001)). Here, the threat on Jacques's life was isolated and was not issued directly to him; it was overheard by neighbors. The gravity of the threat, however, was significantly enhanced by the fact that it immediately followed the murder of Jacques's brother. According to Jacques, the attackers murdered Patrick and threatened Jacques solely because of their Lavalas membership. Moreover, Jacques presented some evidence that he continued to have a well-founded fear of persecution countrywide: He testified that he was able to remain in Jacmel, Haiti, for only three or four days after his brother's murder because the friend with whom he was staying was afraid that "the Convergence" would discover them there. Although there remain questions about whether the threat against Jacques was made under the aegis or with the acquiescence of the Haitian government, Jacques's persecution claims merit further consideration if the BIA finds him to be credible.

### III.

Accordingly, we **GRANT** the petition for review and **REMAND** to the BIA to review the IJ's adverse credibility determination.

4