NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0657n.06

Case No. 09-4260

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

```
FILED
Sep 07, 2011
LEONARD GREEN, Clerk
```

ROCHENEL PETIT JACQUES,             )
                                    )
        Petitioner,                 )
                                    )        ON PETITION FOR REVIEW
    v.                              )        FROM A FINAL ORDER OF
                                    )        THE BOARD OF
ERIC H. HOLDER, JR., Attorney General,  )    IMMIGRATION APPEALS
                                    )
        Respondent.                 )
                                    )
_____     )

BEFORE: BATCHELDER, Chief Judge; DAUGHTREY and MOORE, Circuit Judges.

ALICE M. BATCHELDER, Chief Judge. Petitioner Rochenel Petit Jacques petitions for review of the decision of the Board of Immigration Appeals ("BIA"), which affirmed the decision of the Immigration Judge ("IJ") denying his request for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We DENY the petition for review.

I.

Petit Jacques is a native and citizen of Haiti. He claims that he has been an active member of the Lavalas political party since 1997 and that he faces persecution and torture due to his political opinion.

According to Petit Jacques, on February 17, 2005, members of a rival political party known as "Group 184" or "The Convergence" invaded his home; assaulted his mother; and killed his brother Patrick, who was also a Lavalas member. Petit Jacques initially said that he was also at home and was beaten and threatened by the Convergence. He later changed his story, citing

language barriers and translation errors, and claimed that he was not home during the murder but learned about it from his neighbors. His neighbors told him that the attackers stole a photograph of him from the house and announced, "[W]e killed one, we have one left." Petit Jacques immediately fled to Jacmel, Haiti, where he stayed for three or four days with a friend. He left Jacmel for the Dominican Republic and then traveled to St. Thomas, where an individual named Marozo helped him complete an asylum application.

Petit Jacques entered the United States without inspection on March 7, 2005. On March 14, 2005, he filed an asylum application with the Department of Homeland Security ("DHS"). He was interviewed by an asylum officer in Chicago, and DHS subsequently referred his case to an IJ. Petit Jacques was served with a Notice to Appear, which charged him with being removable as an alien present in the U.S. without being admitted or paroled. Petit Jacques conceded removability but petitioned for asylum, withholding of removal, and protection under the CAT, alleging that he faced persecution and torture for his political opinion.

The IJ determined that Petit Jacques was not credible and denied his petition. Petit Jacques appealed, and the BIA affirmed, stating that "[e]ven if [Jacques] had been found credible, [he] failed to establish that he suffered past persecution, as he was never physically harmed or even directly threatened in Haiti" and that he "failed to show a well-founded fear of persecution countrywide[.]" On petition for review, this panel remanded the matter to the BIA to review the IJ's adverse credibility determination. *See Jacques v. Holder*, 330 F. App'x 538 (6th Cir. 2009). The panel explained,

> The credibility finding goes to the heart of Jacques's claim that he has a well-founded fear of persecution if he returns to Haiti. If his brother was not killed by a political opposition group, or if Jacques was not threatened based on identifiable political connections, he has not shown past persecution or a well-founded fear of future persecution. On the other hand, if Jacques is telling the truth, his persecution claims merit a closer look . . . .

*Id.* at 539-40. On remand, the BIA affirmed the IJ's credibility determination. Petit Jacques filed this timely petition for review in which he argues that the BIA's adverse credibility finding is not supported by substantial evidence.

## II.

Where, as here, the BIA issues a decision, we review the BIA's decision and the portions of the IJ's determination incorporated therein as the final agency order regarding the petitioner's removal. *See Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). We review legal determinations de novo, and we review factual findings "under a substantial evidence standard in which we uphold a BIA determination as long as it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 247 (internal quotation marks and citations omitted). The "substantial evidence" standard requires us to adopt the BIA's and IJ's findings of fact "[u]nless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotation marks and citation omitted).

The BIA and the IJ may reject a petitioner's claim for relief upon finding that the petitioner is not credible. *See, e.g.*, *Shkabari v. Gonzales*, 427 F.3d 324, 327 (6th Cir. 2005). However, the issues on which the adverse credibility determination is based must "go to the heart of the applicant's claim" and cannot be mere "minor and irrelevant inconsistencies." *Sylla v. INS*, 388 F.3d 924, 926

3

(6th Cir. 2004).[1]  "If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility."  *Id.* (internal quotation marks omitted).

The BIA found that the IJ based its adverse credibility finding on "lack of expected details, and inconsistencies which are present in the record and were not adequately explained, which go to the heart of [Petit Jacques'] claim and appear to be embellishments."  Upon careful review of the record in this case, we conclude that substantial evidence supports the BIA's conclusion.

In finding that Petit Jacques was not credible, the BIA cited Petit Jacques' inconsistent account of the events surrounding his brother's murder.  In his initial asylum application, Petit Jacques stated that he was at home when Patrick was killed, that Convergence members beat him, and that they "ordered [him] to leave the country right away because they would be back to eat [his] heart."  Later, Petit Jacques submitted an affidavit stating that Marozo had not understood him fully and had independently added false details to his asylum application.  Petit Jacques explained that he was not at home when his brother was killed, but his neighbors told him about the murder.  He said that his neighbors also told him that Convergence members stole a picture of him from the house, saying that "they would be looking for [him]."  Petit Jacques later testified before the IJ in more detail, saying that the killers declared, "we killed one, we have one left."

Petit Jacques now argues that the BIA failed to address his explanation for the varying accounts.  He claims that Marozo's misunderstandings and embellishments were behind the initial,

---

[1] Because Petit Jacques filed his asylum application (Form I-589) before May 11, 2005, his claims are not governed by the provisions of the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231, which changed the standard governing credibility determinations.  *See Koulibaly v. Mukasey*, 541 F.3d 613, 620 n.2 (6th Cir. 2008).  Among other things, Congress eliminated the "heart of the claim" requirement.  *See id.*

erroneous account of Patrick's murder. He alleges that the BIA misunderstood his explanation and apparently thought that he was claiming that the interpreter at his Chicago asylum interview misunderstood him (rather than Marozo). But the record reveals that Petit Jacques has offered confusing and inconsistent explanations for his changing story. Despite averring in his affidavit that Marozo did not understand him, Petit Jacques testified before the IJ that Marozo understood Creole, wrote everything down, and reviewed the application with him. And although he told the IJ that he learned of the asylum application errors during his Chicago asylum interview, he stated in his affidavit that his attorney (who was retained several months *after* the Chicago interview) first alerted him to the errors. Even if the BIA misunderstood Petit Jacques' explanation of his inconsistent accounts of Patrick's murder, Petit Jacques has not identified anything in the record which *compels* us to conclude that he is credible. *See Yu v. Ashcroft*, 364 F.3d 700, 704 (6th Cir. 2004); *Dem v. Gonzales*, 244 F. App'x 14, 18 (6th Cir. 2007).

The BIA's adverse credibility finding is also supported by the many other gaps and inconsistencies in Petit Jacques' story. Petit Jacques did not know the full name of his political party, despite his claim that he was an active member for eight years and had attended meetings and demonstrations throughout that time.[2] Nor did he have a Lavalas membership card. He provided ambiguous and inconsistent testimony regarding the location of Lavalas meetings and the people who attended them. And although he claimed that the meetings had to be secret because Lavalas

---

[2] On appeal, Petit Jacques claims that the BIA and IJ failed to address his explanation for not knowing the Lavalas party's full name. However, the only explanation that Petit Jacques provided was that rank-and-file members did not know everything about the party. The IJ specifically rejected this explanation, saying that "it would be almost impossible for him not to know [the party's full name], attending meetings and demonstrations as he did." Nothing in the record compels a contrary conclusion.

members feared the opposition and desired to conceal their identities, he simultaneously asserted that he openly wore Lavalas t-shirts and hats around his neighborhood. Further, Petit Jacques lacked basic knowledge of Haitian politics. He erroneously believed that "Group 184" and the Convergence were a singular party; he could not remember the name of the opposition party's leader; he did not know the preceding President's first name, even though that person apparently led Lavalas when Petit Jacques joined the party; and he had no knowledge of violence perpetrated by Lavalas, despite widespread media coverage. Viewed cumulatively, these ambiguities and inconsistencies undermine Petit Jacques' assertion that he was a member of Lavalas, something that goes to the heart of his political persecution claim. *See Vasha v. Gonzales*, 410 F.3d 863, 871 (6th Cir. 2005) (affirming IJ's adverse credibility determination based on numerous inconsistencies, viewed cumulatively); *Dem*, 244 F. App'x at 18 (same). Accordingly, we are not compelled to conclude that the BIA's adverse credibility finding was erroneous.

### III.

We **DENY** the petition for review.