NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0098n.06

No. 11-4201

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Jan 29, 2013***

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| MUSI NDAH NDAH, | ) |
| | ) |
| Petitioner, | ) |
| | ) ON PETITION FOR REVIEW OF A |
| v. | ) DECISION OF THE BOARD OF |
| | ) IMMIGRATION APPEALS |
| ERIC H. HOLDER, JR., United States | ) |
| Attorney General, | ) |
| | ) |
| Respondent. | ) |

Before:  NORRIS, GIBBONS, and DONALD, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  Petitioner Musi Ndah Ndah seeks review of

two orders of the Board of Immigration Appeals ("BIA") denying his applications for asylum,

withholding of removal under the Immigration and Nationality Act ("INA"), and withholding of

removal under the Convention Against Torture ("CAT").  For the reasons set forth below, we deny

Ndah's petition for review of both BIA orders.

I.

Ndah is a citizen of Cameroon.  On May 6, 2001, he arrived in Memphis, Tennessee, as a

nonimmigrant visitor for pleasure.  He was authorized to remain in the United States until November

5, 2001, but he stayed in the country past this date.  Upon threat of removal, Ndah sought asylum,

withholding of removal under the INA, and withholding of removal under CAT.  Thereafter, he

-1-

appeared before an immigration judge ("IJ") for removal proceedings. The IJ found that Ndah was not credible because he did not establish his identity, and therefore he did not meet his burden of proof on any of his asserted grounds. Ndah was ordered to be removed from the United States and deported to Cameroon. Ndah appealed to the BIA, and the BIA affirmed the IJ's denial of asylum and withholding of removal under the INA but remanded the case to reconsider Ndah's CAT claim. On remand, a different IJ conducted a hearing and found that Ndah was not eligible for withholding of removal under CAT and ordered him removed. Once again, Ndah appealed the IJ's decision, which was upheld by the BIA.

Ndah alleged the following facts in his affidavit supporting his request for asylum. In 1990, Ndah joined the Social Democratic Front political party. He was arrested in 1992 for protesting the results of Cameroon's presidential election, detained for one month under poor conditions, and beaten every day. During this time, he developed a stomach ulcer and typhoid from malnutrition and poor sanitation. Ndah then became involved in the Southern Cameroons National Council ("SCNC"), a nationalist movement created in 1994 to seek independence for Southern Cameroon. Ndah also joined the Human Rights Defense Group in 1996, an organization devoted to combating human rights violations in Cameroon. In 1999, Ndah and other SCNC members declared independence for Southern Cameroon by taking over a government radio station in Buea, Cameroon. Several weeks later, Ndah was arrested and detained in a Buea prison for eight months. The police beat and burned Ndah and questioned him about his involvement with SCNC and the Human Rights Defense Group. Ndah escaped from prison and went into hiding. With the help of family and friends, Ndah left Cameroon for the United States in May 2001.

## II.

Where, as here, the BIA reviews the IJ's decision and issues its own opinion, we review the BIA's decision as a final agency determination. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). This court also reviews the IJ's decision to the extent that the BIA adopts its reasoning. *Id.* The BIA's factual determinations, including credibility determinations, are reviewed under a substantial evidence standard. *Abdurakhmanov v. Holder*, 666 F.3d 978, 982 (6th Cir. 2012); *Lin v. Holder*, 565 F.3d 971, 976 (6th Cir. 2009). Eligibility determinations "must be upheld if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *GINS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). Under this deferential standard, we may overturn the BIA determination only if we find that the evidence "not only *supports* [the contrary] conclusion, but *compels* it." *Id.* at 481 n.1; *see also* 8 U.S.C. § 1252(b)(4)(B) ("[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

## III.

Ndah claims that there are three reasons why his petition for review of the BIA orders should be granted: (1) the hostile environment created by the first IJ discouraged Ndah from addressing the discrepancies in his application; (2) the BIA's adverse credibility determination with regard to his asylum and INA withholding of removal claims was not supported by substantial evidence; and (3) the BIA's adverse credibility determination with regard to his CAT claim was not supported by substantial evidence, and he proved that it was more likely than not that he would be tortured if he were removed to Cameroon.

A.

Ndah claims that during his first hearing, IJ Jeffrey Chase created an atmosphere in which it was difficult for Ndah to fully advocate for himself. Ndah relies on several comments made by IJ Chase. For instance, IJ Chase said: "Sir, you can answer the question. You are not sitting in a coffee shop that you can just talk whenever you feel like it, you're not standing on a soap box in the park giving a speech. You can answer the question." At another point during the hearing, Ndah said that he did not report his stolen passport to police officers in the United States because he was afraid of them. In response, IJ Chase asked, "I'm a little confused? What was the reason that you came to America as opposed to other countries?" Ndah argues that this statement and others belittled Ndah's decision to come to the United States and his reluctance to contact the police after he was robbed. Ndah points out that the Second Circuit has admonished IJ Chase's behavior on several occasions.

In the rare instance, this court may remand a case where the IJ appeared biased and hostile toward the petitioner. *Elias v. Gonzales*, 490 F.3d 444, 450 (6th Cir. 2007). However, Ndah did not raise this claim to the BIA.[1] Accordingly, he failed to exhaust his administrative remedies and this court lacks jurisdiction to hear the claim. 8 U.S.C. § 1252(d)(1); *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004) ("[W]e hold that only claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal.").

---

[1] We note that Ndah's hostility argument is not merely part of his claim that the IJ's credibility determination was not supported by substantial evidence, but it is an entirely separate claim alleging procedural unfairness. *See Elias*, 490 F.3d at 451 (discussing IJ hostility in terms of procedural fairness); *see also Hassan v. Gonzales*, 403 F.3d 429, 435–36 (6th Cir. 2005) (analyzing procedural fairness as a due process claim).

B.

Second, Ndah claims that the BIA's adverse credibility determination with regard to his asylum and INA withholding of removal claims was not supported by substantial evidence. The Attorney General may grant asylum to a "refugee," defined as a person outside of his or her country of nationality "who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A); 1158(b)(1)(A). An applicant for asylum bears the burden of proving that he or she is a refugee. *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998). To demonstrate a well-founded fear, an applicant must subjectively fear persecution and present evidence that this fear is objectively reasonable. *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005). If the applicant proves past persecution, it is presumed that the applicant has a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). An applicant does not, however, have to show that future persecution is more likely than not. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987). By contrast, an applicant qualifies for withholding of removal under the INA when that individual demonstrates a "clear probability" that his or her "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *Abdurakhmanov*, 666 F.3d at 981. This is a higher burden of proof than the burden required to prove eligibility for asylum. *Berri v. Gonzales*, 468 F.3d 390, 397 (6th Cir. 2006).

An applicant may be denied asylum or withholding of removal if the IJ finds that he or she is not credible. "An adverse credibility finding must be based on issues that go to the heart of the applicant's claim. [It] 'cannot be based on an irrelevant inconsistency.'" *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004) (quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 619 n.2 (6th Cir. 2004)), *superseded by statute as*

*noted in Jacques v. Holder*, 446 F. App'x 747, 749 n.1 (6th Cir. 2011).[2] If a discrepancy cannot be seen as an attempt to enhance an applicant's claims of persecution, it does not affect the applicant's credibility. *Id.* An applicant's failure to establish his or her identity can serve as the basis for an adverse credibility determination. *See Mullaj v. Gonzales*, 186 F. App'x 574, 576 (6th Cir. 2006); *Hothi v. Holder*, 467 F. App'x 549, 550 (9th Cir. 2012); *Fofana v. Attorney Gen.*, 348 F. App'x 801, 803 (3d Cir. 2009); *Borovikova v. U.S. Dep't of Justice*, 435 F.3d 151, 158 (2d Cir. 2006).

The BIA affirmed the IJ's adverse credibility determination based on its conclusion that Ndah failed to establish his identity, explaining that identity is "perhaps the most critical element of an asylum claim." In doing so, it relied on three inconsistencies in Ndah's testimony and the record he submitted in support of his application for asylum: his date of birth, whether he was married and had a child in Cameroon, and his profession.

First, the BIA highlighted inconsistencies in Ndah's date of birth. At the hearing, Ndah testified that he was born on August 18, 1970. However, Ndah testified that he typed "September 18, 1970" as his birthday on his affidavit in support of his application for asylum. His date of birth is listed as May 18, 1970, on his Social Democratic Front membership card and "1970" on his voter registration card.

Second, the BIA pointed out that there were several inconsistencies regarding whether Ndah is married and has a child. On his application for asylum, submitted in April 2002, Ndah checked boxes representing that he was not married and did not have any children. On two other occasions Ndah indicated that he was single and did not have children—when he applied for employment authorization

---

[2]Ndah filed his asylum application before May 11, 2005, and therefore the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231, does not apply. *Koulibaly v. Mukasey*, 541 F.3d 613, 620 n.2 (6th Cir. 2008). The REAL ID Act, among other things, eliminated the "heart of the claim" requirement. *Id.*

in November 2002 and when he applied for an immigrant visa and alien registration in May 2003. On his application for immigrant visa and alien registration, Ndah wrote "N/A" when asked to provide information about his spouse and children. However, at the hearing, Ndah testified that he married in Cameroon and has a child there. In October 2004, before his first hearing, Ndah submitted a letter purportedly written by his wife, a birth certificate for his son, and pictures of his wife and son in support of his application for asylum.

Third, the BIA stated that Ndah's identification documents inconsistently identify his profession. Ndah testified that he was a computer programmer in Cameroon, and his application for asylum represents that he was a computer programmer from August 1995 to April 2001. Ndah's 2002 SCNC card also states that he is a computer programmer. However, Ndah is listed as a student on his passport, issued in 2000. Likewise, he is classified as a student on his national identity card, issued in 1988, his voter registration card, issued in 1994, and his SCNC card, issued in 1995. His 1992 Social Democratic Front membership card lists Ndah as a "commercial agent."

The BIA stated that, "[i]n light of these discrepancies, and [Ndah's] failure to explain them to the satisfaction of the Immigration Judge, other than to say that he and others made various mistakes, we affirm the Immigration Judge's conclusion that [Ndah] failed to establish his identity." The BIA then explained that, like the IJ, it was troubled that the attorney for the U.S. Immigration and Customs Enforcement agency ("ICE") did not, contrary to his representation, send Ndah's documents to the U.S. Consulate in Cameroon or the Forensics Document Laboratory in McLean, Virginia, to be examined. However, the BIA noted that Ndah had the burden of proof and he had not authenticated his identity

documents pursuant to 8 C.F.R. § 1287.6.[3] The BIA also held that because Ndah did not meet his burden of proof to establish eligibility for asylum, he did not satisfy the higher burden of proof for withholding of removal under the INA.

Ndah claims that the BIA's adverse credibility determination was not supported by substantial evidence. He argues that his birth date, marital status, profession, and whether he has a child are not relevant to determining whether he has been persecuted or has a well-founded fear of suffering persecution in Cameroon. Ndah also faults ICE for failing to examine his documents. Finally, Ndah argues that the BIA ignored the parts of the record that corroborated his claims, including letters from family members, membership documents, medical records, and photographs. In response, the government claims that the adverse credibility determination was supported by substantial evidence because "[h]is inconsistent documentation and testimony created doubt about whether he was who he claimed to be."

We find that the BIA's adverse credibility determination with regard to Ndah's claims for asylum and withholding of removal under the INA was supported by substantial evidence. The BIA identified specific reasons for its adverse credibility determination, namely the inconsistencies in the record. The record demonstrates that Ndah's date of birth, marital status, and profession varied among the documents he submitted in support of his applications. As Ndah points out, these biographical facts do not tell us whether he has been persecuted or has a well-founded fear of persecution. However, these facts

---

[3] 8 C.F.R. §§ 287.6 and 1287.6 outline standards for authenticating official documents. This court has recognized other courts' holding that it is an abuse of discretion for the BIA to reject an allegedly official document just because it has not been authenticated pursuant to 8 C.F.R. § 287.6. *Chen v. Holder*, 397 F. App'x 111, 117 (6th Cir. 2010). However, the BIA may reject an unauthenticated document if there are no convincing indications of the document's authenticity. *Id.* In this case, both the BIA and IJ noted that Ndah's documents had not been authenticated. They did not, however, make any other findings about whether the documents appear to be authentic.

establish something more fundamental—his identity. Ndah's failure to provide consistent biographical data creates doubt as to whether Ndah is the person he claims to be.

Although IJ Chase may have conducted himself inappropriately, Ndah had adequate opportunities during the hearing to clarify the record. Ndah did not provide convincing explanations for the discrepancies. In the aggregate, his identity was still in doubt, which is problematic in light of his burden to prove that he was eligible for asylum or withholding of removal. *See Mikhailevitch*, 146 F.3d at 389. We also note that Ndah did not authenticate official documents pursuant to 8 C.F.R. § 1287.6. Documents that have not been authenticated pursuant to § 1287.6 may be admissible, *Chen v. Holder*, 397 F. App'x 111, 117 (6th Cir. 2010), and here the IJ did not specifically exclude any documents based on a finding that they were not authentic. Nevertheless, the absence of authenticated documents in the record makes it more difficult for Ndah to argue that he had adequately established his identity. Even if the evidence in the record could have supported a finding that Ndah is the person he purports to be, that evidence was not so overwhelming as to compel any reasonable adjudicator to draw that conclusion. Accordingly, we find that the BIA's adverse credibility determination was supported by substantial evidence.

C.

Third, Ndah claims that the BIA's adverse credibility determination with regard to his CAT claim was not supported by substantial evidence and that he proved that it was more likely than not that he would be tortured in Cameroon. To qualify for withholding of removal under CAT, an individual must prove that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Moreover, the applicant's testimony, "if credible, may be sufficient to sustain the burden of proof without corroboration." *Id.* In contrast to claims for asylum and

INA withholding of removal, an applicant does not have to show that torture would be motivated by race, religion, nationality, membership in a particular social group, or political opinion to qualify for withholding of removal under CAT. *Berri*, 468 F.3d at 397. "Torture" is defined as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1). Additionally, to be considered torture, "an act must be specifically intended to inflict severe physical or mental pain or suffering." 8 C.F.R. § 1208.18(a)(5). An adverse credibility determination can also serve as the basis for denying withholding of removal under CAT. *See Khozhaynova v. Holder*, 641 F.3d 187, 197 (6th Cir. 2011).

A different IJ heard Ndah's CAT claim on remand. The IJ made an adverse credibility determination and alternatively found that Ndah did not prove that it was more likely than not that he would be tortured in Cameroon. The BIA affirmed. It explicitly adopted the IJ's opinion, so we review the IJ's opinion as the final agency determination. *Khalili*, 557 F.3d at 435. In her order, the IJ explained that Ndah testified that he was afraid the Cameroonian government would torture him solely because of his involvement in SCNC. Ndah relied on conversations with his mother and brother, who live in Cameroon. He said that he spoke with them last in December 2008 and they told him that the police had stopped by their home, threatened them, and asked where they could find Ndah. Ndah also submitted letters written in 2002 and 2003 by his uncle, mother, and wife stating that the police were looking for him.

The IJ relied on two inconsistencies in the record to find that Ndah was not credible as to his CAT claim—the date he joined SCNC and his level of involvement in SCNC's United States chapter. The IJ highlighted that Ndah twice testified that he became a member of SCNC in 1999, but that his membership card is dated March 1, 1995. When confronted with this inconsistency, Ndah said that perhaps he confused the date that he took part in the radio station takeover with the date he joined SCNC. The IJ did not find this explanation convincing, noting that he allegedly joined SCNC four years before the radio station takeover.

Next, the IJ relied on an inconsistency between Ndah's testimony and the affidavit of Januarius J. Asongu, leader of the North American branch of SCNC. In his affidavit, Asongu stated that "[u]pon his arrival in the United States [Ndah] . . . has continuously played a visible role in the [SCNC]. While in the United States, [Ndah] has participated actively in the activities of the SCNC including meetings, demonstrations, among other things." By contrast, Ndah testified that his participation in SCNC while in the United States was limited to attending two meetings. Ndah further testified that between twenty-five and fifty people attended each of these meetings and that he did not speak at either of them. The IJ reasoned that, because of this inconsistency, "the credibility of Mr. Asongu's entire affidavit is seriously called into question and indeed completely undermined." In particular, the inconsistency undermines the credibility of Asongu's statement that, "[b]ecause of his activities as a political and human rights activist, [Ndah] has been arrested and severely tortured on two occasions." The IJ also highlighted that Asongu's affidavit states: "After talking with Musi and reading his affidavit, I think his story is credible . . . ." The IJ explained that Asongu's claim that Ndah was tortured seemed to be based on his communications with Ndah and Ndah's affidavit, rather than any independent corroborating evidence. Furthermore, the IJ noted that Ndah claimed not to recall receiving a letter from his wife that

-11-

referenced police brutality, even though he proffered it in support of his CAT claim. For these reasons, the IJ found that Ndah was not credible with respect to his CAT claim.

Alternatively, the IJ concluded that Ndah failed to demonstrate, on the merits, that it was more likely than not that he would be tortured if removed to Cameroon. The IJ acknowledged that Cameroon's human rights record is poor and that the government considers SCNC to be illegal. Nevertheless, the IJ reasoned that the most recent "documentary evidence" was a 2003 letter from Ndah's mother stating that the government was looking for him. Moreover, Ndah admitted that he had not communicated with his family in Cameroon since December 2008—almost a year before the hearing. In sum, the IJ explained: "All this Court has is the respondent's uncorroborated (incredible) testimony wherein he states he has had telephone conversations with his mother and brother up to December 2008 in which they claim that the police were still looking for the respondent." This was insufficient to show that it was more likely than not that Ndah would be tortured. Therefore, the IJ denied Ndah's application for withholding of removal under CAT.

Ndah argues that the BIA mischaracterized the record when it found two inconsistencies in his testimony, noting that, "while [Asongu] may have resorted to some hyperbole, these generalized statements are still consistent with Mr. Ndah's specific and detailed testimony." Ndah also contends that he credibly testified that if he were to engage in political activities in Cameroon in the future, he would be tortured. The government responds by pointing to the inconsistencies relied on by the BIA, and explaining that "[Ndah] claimed he would be tortured due to his involvement with the SCNC, but he could not remember when he joined the organization and his corroboration evidence created more doubt about his story." The government also claims that the BIA's decision on the merits was supported by substantial evidence because the only evidence that Ndah offered to corroborate his claim that the

Cameroonian government was looking for him were letters from 2003, and Ndah had not been active in SCNC since 2001.

We find that the BIA's adverse credibility determination with regard to Ndah's CAT claim was supported by substantial evidence. Ndah's involvement in the SCNC goes to the heart of his claim that he would be tortured if removed to Cameroon. The IJ relied on two inconsistencies relating to Ndah's involvement with SCNC that undermine his credibility. During the hearing, the IJ gave Ndah ample opportunity to explain the inconsistency between the membership date on his SCNC card and the date he testified to joining, but the IJ found Ndah's explanation not to be credible. Moreover, Asongu's letter contradicts Ndah's testimony about his participation in SCNC in the United States. Because this letter falsely represents Ndah's involvement in SCNC's United States chapter, its assertion that Ndah had been tortured in Cameroon because of his SCNC involvement is called into question. As a result, the IJ's adverse credibility determination was supported by substantial, reasonable, and probative evidence.

Alternatively, we conclude that the BIA's adoption of the IJ's alternative finding on the merits was supported by substantial evidence. To qualify for relief under CAT, Ndah had the burden to prove that it was more likely than not that he would be tortured in Cameroon. The most recent physical evidence consisted of letters dated March 2003, six years before the hearing. Moreover, Ndah admitted that he had not spoken to his family in Cameroon since December 2008, almost a year prior to the hearing. He provided no affidavits or witnesses at his hearing. This limited record certainly does not compel a conclusion that Ndah has shown that it is more likely than not that he would be tortured in Cameroon.

## IV.

For the foregoing reasons, we deny Ndah's petition for review.

-13-