**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0527n.06

**No. 08-4188**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 18, 2010**
LEONARD GREEN, Clerk

|                        |     |                                 |
| ---------------------- | --- | ------------------------------- |
| QIU HUA CHEN,          | )   |                                 |
|                        | )   |                                 |
|   Petitioner, | )  |                                 |
|                        | )   |                                 |
| v.                     | )   | On Petition for Review of a Final |
|                        | )   | Order of the Board of Immigration |
| ERIC H. HOLDER, JR.,   | )   | Appeals                         |
|                        | )   |                                 |
|   Respondent. | )  |                                 |

Before: BOGGS, MOORE, and GIBSON, Circuit Judges.[*]

BOGGS, Circuit Judge. Qiu Hua Chen, a native of China's Fujian Province, petitions this court for review of a decision of the Board of Immigration Appeals ("BIA") denying her motion to reopen her removal proceedings to apply for asylum based on changed country conditions. Chen's motion alleged that, following the denial of her original asylum application, Chinese officials had intensified their enforcement of coercive family-planning regulations. Chen's motion also alleged that, because she had given birth to two children in the United States, she would be forcibly sterilized if she were returned to China. Holding that she had failed to demonstrate materially changed country conditions, the BIA denied Chen's motion. As an alternative basis for its decision, the BIA held that Chen was unable to make a prima facie showing of eligibility for asylum given the absence of

---

[*]The Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

persuasive evidence that foreign-born children are counted for purposes of China's one-child policy. Because we find that the BIA did not abuse its discretion, we deny Chen's petition for review.

I

On February 26, 2000, Chen arrived in Los Angeles, California. She was carrying neither a passport nor valid immigration documents. Several weeks after her arrival, the government initiated removal proceedings against Chen, charging her with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Appearing before an Immigration Judge ("IJ"), Chen conceded that she was removable as charged and applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). Chen's application for relief stated that she had been arrested for accusing a local government official of embezzling earthquake relief funds.

Chen was subsequently released from custody pending a hearing on her eligibility for relief. A four-year period of delay ensued, during which Chen married Shan Xiong Wang, another Chinese national,[1] and gave birth to the couple's first son, Ivan. By mid-2003, Chen had become pregnant with the couple's second son, Calvin.

Chen's asylum hearing was finally held on March 25, 2004. At the hearing, Chen contended that, if she were returned to China, she would be subject to persecution for her actions in relation to the alleged embezzlement scandal in her village. Chen also argued that she would be forcibly

---

[1]Wang was also the subject of removal proceedings, and he was eventually ordered removed. Like Chen, he applied for various forms of relief, but his applications were denied. He subsequently moved to reopen his removal proceedings, and his motion was granted. However, he was again denied relief. Wang then petitioned this court for review, but that petition was denied in an unpublished order. *See Shan Xiong Wang v. Holder*, No. 08-4181 (6th Cir. Nov. 12, 2009).

sterilized upon her return, as she was then pregnant a second time in violation of China's one-child policy. The IJ rejected Chen's claims and denied her applications for relief, ordering her removed to China. Chen appealed, and the BIA affirmed the IJ's decision on August 15, 2005. Chen nonetheless remained in the United States with her family.

On April 22, 2008, more than two years after the BIA affirmed the IJ's order of removal, Chen filed a motion with the BIA to reopen her removal proceedings so that she could reapply for asylum. Under 8 U.S.C. § 1229a(c)(7)(C)(i), a motion to reopen removal proceedings must be filed within ninety days of a final administrative order. However, the ninety-day time limit does not apply to a motion if the purpose of the motion is to apply for asylum on the basis of changed country conditions arising in the country of nationality. 8 U.S.C. § 1229a(c)(7)(C)(ii). Chen claimed that she qualified under this exception. She asserted that the purpose of her motion was to apply for asylum on the basis of her fear that, if she were returned to China, she would be forcibly sterilized or otherwise persecuted for violating China's one-child policy by giving birth to two children. She further asserted that country conditions in China had changed since the date on which her asylum application was rejected, arguing that Chinese officials had recently intensified enforcement of coercive family-planning policies.

In support of her motion, Chen offered a plethora of documents, a number of which had been brought to the BIA's attention in previous cases. Among the previously submitted documents were a 2003 Changle City Administrative Opinion and a 2003 Fujian Province Administrative Decision (the "Administrative Decisions"), which the BIA had analyzed in at least two prior precedential decisions. *See In re S-Y-G-*, 24 I. & N. Dec. 247, 256 (BIA 2007) (finding the Administrative

Decisions insufficient to demonstrate that Chinese nationals giving birth to children abroad are subject to forcible sterilization); *In re J-W-S-*, 24 I. & N. Dec. 185, 192 (BIA 2007) (noting that the Administrative Decisions do not address the subject of forcible sterilization). In addition to the Administrative Decisions, Chen submitted a document entitled *Q&A for Fuzhou City Family-Planning Information Handbook* (the "Q&A Handbook") and the affidavit of Dr. John Shields Aird (the "Aird affidavit"). The Q&A Handbook and the Aird affidavit, like the Administrative Decisions, had been addressed in precedential opinions. *See In re S-Y-G-*, 24 I. & N. Dec. at 256 (observing that the Q&A Handbook does not indicate, on its face, that forcible sterilization is required after the birth of a second child); *In re C-C-*, 23 I. & N. Dec. 899, 901 (BIA 2006) (deeming the Aird affidavit relatively unpersuasive with respect to the current country conditions in China).

Chen's motion also relied on a number of documents that the BIA had not addressed in precedential decisions. Included in Chen's novel offerings were several newspaper articles, which discussed alleged episodes involving the use of force against Chinese citizens found to be in violation of the one-child policy. Chen also submitted letters from friends and family members in China recounting fines, arrests, abortions, and forcible sterilizations inflicted on them for having, or attempting to have, more than one child. Additionally, Chen proffered an unsigned, black-and-white copy of a letter purportedly from the Village Committee of ChuanShi ("the Village Committee letter"). The Village Committee letter indicated that Chen and her husband would be specific targets for forced sterilization upon their return to China.

Despite this evidence, the BIA denied Chen's motion to reopen as untimely, holding that she had failed to establish materially changed country conditions. The BIA's decision noted that "the

majority of [the] documents [submitted with Chen's motion] have already been considered by this

Board . . . and fail to show a material change in the family planning policy of Fujian Province in

China." The BIA also concluded that Chen's anecdotal evidence was of little probative value:

> [W]e do not find the respondent's personal affidavit or the photocopies of the letters purportedly sent to her by her mother-in-law, cousins, and other relatives in China, amount to evidence of changed country conditions or circumstances in China. . . . Anecdotal accounts of isolated events do not necessarily indicate, without more, that any one person is at potential risk of harm. . . . Furthermore, the anecdotal information contained in many of these documents concern[s] individuals who may or may not possess characteristics which are superficially similar to this respondent, and does not meet the heavy evidentiary burden required for motions to reopen.

Finally, the BIA declared the Village Committee letter to be "inadequate." Observing first that the

Village Committee letter was of dubious authenticity, the BIA went on to note that "there is [no]

indication of the authority of the Village Committee Birth Planning Office to make or enforce such

statements." Consequently, the BIA rejected the evidence. As an additional ground for denying

Chen's motion, the BIA held that she had failed to establish a reasonable likelihood that her second

application for asylum would succeed on the merits. The BIA based its conclusion on a 2007 report

compiled by the U.S. Department of State entitled *China: Profile of Asylum Claims and Country

Conditions* ("2007 State Department Profile"). Taking administrative notice of the report's contents

pursuant to 8 C.F.R. § 1003.1(d)(3)(iv), the BIA quoted the report as saying: "U.S. officials in China

are not aware of the alleged policy, at the national or provincial levels, mandating the sterilization

of one partner of couples that have given birth to two children, at least one of whom is born abroad."

On the strength of that statement, the BIA concluded that Chen could not establish a "realistic

likelihood of being forced to undergo sterilization upon return to China."

No. 08-4188
Qiu Hua Chen v. Eric H. Holder, Jr.

On September 18, 2008, Chen timely petitioned this court for review of the BIA's denial of her motion to reopen.

II

"The BIA has 'broad discretion' to grant or deny a motion to reopen." *Bi Feng Liu v. Holder*, 560 F.3d 485, 489 (6th Cir. 2009) (quoting *INS v. Doherty*, 502 U.S. 314, 323 (1992)). Consequently, we review such decisions for abuse of discretion. *Ibid.* An abuse of discretion occurs if the BIA's denial of a motion to reopen "was made without rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)).

Normally, "the Board's denial of relief may be affirmed only on the basis articulated in the decision and this Court may not assume that the Board considered factors that it failed to mention in its opinion." *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004). However, "an error does not require a remand if the remand would be pointless because it is clear that the agency would adhere to its prior decision in the absence of error." *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 338 (2d Cir. 2006); *see also Yang Lin v. Holder*, 320 F. App'x 428, 437 (6th Cir. 2009) ("[I]t is unnecessary to remand in cases . . . where we can predict with confidence that the agency would reach the same result absent [the alleged] error.").

In reviewing the BIA's factual conclusions, we employ a substantial-evidence standard. *Guo Qiang Hu v. Holder*, 318 F. App'x 348, 350 (6th Cir. 2009) ("We review the BIA's factual findings under the substantial evidence standard." (citing *Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir.

- 6 -

2007))). Under this standard, we consider factual findings to be "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Guo Ping Wu v. Holder*, 339 F. App'x 596, 599 (6th Cir. 2009) (citations and internal quotation marks omitted); *see* 8 U.S.C. § 1252(b)(4).

III

Chen's first argument is that the BIA abused its discretion in deciding that her motion to reopen was untimely in light of her failure to demonstrate materially changed country circumstances. Under 8 U.S.C. § 1229a(c)(7)(C)(i)-(ii), the BIA may reject as untimely any motion to reopen brought more than ninety days after the entry of a final administrative order unless that motion is brought to apply for asylum on the basis of changed country conditions. *See Liu*, 560 F.3d at 490. To qualify for this exception, the movant must submit material evidence of changed circumstances that was not available at the previous hearing. 8 U.S.C. § 1229a(c)(7)(C)(ii). "Further, the evidence must show that the change in country conditions has caused an individualized threat of harm to the applicant." *Niyibizi v. Mukasey*, 300 F. App'x 371, 374 (6th Cir. 2008); *see also Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004) (holding that an applicant "must offer reasonably specific information showing a real threat of individual persecution").

In this case, the BIA concluded that Chen's motion—which had been brought more than two years after the filing window had closed—was untimely, finding that Chen had failed to demonstrate that country conditions had changed materially. Chen attacks the BIA's decision on numerous grounds. Specifically, Chen argues that the BIA abused its discretion by: failing to address a number of documents appended to her motion to reopen; rejecting the Village Committee letter; "generically relying" on precedent to dismiss previously rejected documents; and concluding that parents of

- 7 -

foreign-born children are not subject to persecution upon returning to China. These arguments prove unsuccessful.

A

Chen's first argument is that the BIA abused its discretion by reaching its decision without expressly analyzing various background documents that she submitted with her motion to reopen. Specifically, Chen faults the BIA for failing to address several newspaper articles, which detail alleged acts of brutality committed against Chinese families for attempting to have more than one child. *See* Petitioner's Br. at 19. Chen contends that the articles demonstrate a material change in country conditions, namely, heightened enforcement of the one-child policy. According to Chen, the BIA was therefore obliged to acknowledge and discuss the articles in arriving at its conclusion.

However, Chen overlooks our holding in *Yan Xia Zhang v. Mukasey*, 543 F.3d 851 (6th Cir. 2008). In *Zhang*, we held that the BIA is not required to offer an exegesis on every piece of evidence in the record. *Id.* at 854 ("We do not require the Board's opinion to mention every piece of evidence before it or every logical element of a motion."). Rather, "the [BIA] need only analyze and explain the basis on which it decide[s] against [a movant]." *Ibid.* This means that, when a critical element of the petitioner's claim fails, the BIA "owe[s] no duty to rehearse" the evidence pertaining to other aspects of the motion. *Id.* at 855; *see also Feng Gui Lin v. Holder*, 588 F.3d 981, 987 (9th Cir. 2009) ("[A]lthough the BIA must consider a petitioner's evidence of changed country conditions, it need not expressly refute on the record every single piece of evidence.").

Here, the BIA's decision was based on Chen's failure to show that children born abroad are counted for purposes of China's family-planning policy. In rejecting the bulk of Chen's evidence,

the BIA noted that "the majority of th[e] documents ha[d] already been considered . . . and addressed in [the BIA's] precedent decisions, and fail[ed] to show a material change in the family planning policy of Fujian Province in China." To support its point, the BIA cited *In re S-Y-G-*, 24 I. & N. Dec. 247 (BIA 2007); *In re J-W-S-*, 24 I. & N. Dec. 185 (BIA 2007); and *In re C-C-*, 23 I. & N. Dec. 899 (BIA 2006). Each of those decisions held that "the evidence [of record] . . . fail[ed] to establish that any sanctions imposed on parents of foreign-born children would rise to the level of persecution." *In re J-W-S-*, 24 I. & N. Dec. at 194; *see In re S-Y-G-*, 24 I. & N. Dec. at 255-56; *In re C-C-*, 23 I. & N. Dec. at 903-04. Thus, by citing the aforementioned decisions, the BIA indicated that its holding was predicated on Chen's inability to establish that returnees faced persecution on account of foreign-born offspring.[2]

Given the basis of the BIA's holding, there was no need for the BIA to address the background articles submitted with Chen's motion. As Chen admits, the articles were offered for a single purpose: to prove a recent surge in violence as a means of enforcing China's restrictions on reproduction. However, the articles do not speak to the issue of whether parents of children born abroad are subjected to forcible sterilization. As a result, the articles do not undermine the foundation of the BIA's decision. To put it another way, even if the BIA had found that the articles

---

[2]This conclusion is also buttressed by the BIA's discussion of Chen's failure to make out a prima facie showing of eligibility for asylum. Noting that Chen did not have a reasonable likelihood of success on the merits of her asylum claim, the BIA observed that "there was no persuasive evidence that returnees who have children born in the United States face a realistic likelihood of being forced to undergo sterilization upon return to China." It is therefore plain that the BIA's principal focus in rejecting Chen's motion to reopen was the lack of evidence regarding the applicability of China's one-child policy to Chinese nationals with children born outside the country.

were accurate and evidenced an upsurge in the practice of forcible sterilization, the BIA's ultimate

conclusion would have been the same—parents with foreign-born children are not subject to

persecution for violation of China's family-planning regulations. Thus, "[t]o remand here because

the [BIA] did not needlessly discuss documents on points of fact not material to its decision would

frustrate [the] policy of finality in immigration proceedings without any benefit." *Zhang*, 543 F.3d

at 855. Accordingly, we find that the BIA was under no obligation to analyze the articles expressly

in this case. *See ibid*. (holding that the BIA owes no duty to rehearse evidence not directly germane

to its decision "for sake of completeness").[3]

B

Chen's next argument is that the BIA abused its discretion by rejecting the putative Village

Committee letter, which identified her as a specific target for forcible sterilization. She argues that,

because the BIA reopened her husband's removal proceedings on the basis of a similar letter, the

BIA's refusal to credit the letter in her case constituted an inconsistent (and therefore improper)

application of agency standards. *See* Petitioner's Br. at 27. She also argues that the BIA erred in

---

[3]In addition to arguing that the BIA should have addressed the newspaper articles, Chen contends that the BIA's summary dismissal of the photocopied letters from her friends and family members in China was an abuse of discretion. However, her contention with respect to the letters is also foreclosed in light of *Zhang*. The letters, like the newspaper articles, simply provide evidence of "increased enforcement of the [one-child] policy in [her] local area of China." Petitioner's Br. at 25. The letters do not furnish proof of the fact that Chinese citizens with multiple foreign-born children are subject to forcible sterilization. The BIA was therefore entitled to dismiss the letters summarily. Additionally, to the extent that Chen claims the BIA abused its discretion in failing to address or analyze any other documents that describe general enforcement practices, we find that *Zhang* renders such claims meritless.

relying on the fact that the Village Letter was an unauthenticated copy of an unsigned document. Neither of these arguments withstands scrutiny.

1

Although Chen correctly notes that the BIA reopened her husband's removal proceedings on the basis of a Village Committee letter similar to the one she submitted, the BIA eventually rejected her husband's letter, holding that it was "inadequate evidence" because it "[was] a black and white copy, [did] not contain an original signature, and contain[ed] no authenticating information." *In re Shan Xiong Wang*, No. A073-208-683, at 3 (BIA Sept. 4, 2008) (unpublished decision). Given the BIA's eventual rejection of the Village Committee letter in her husband's case, any claim that the BIA has been inconsistent in its approach to the letter is without force. Furthermore, we are convinced that remand for reevaluation of the letter in light of her husband's proceedings would be futile, rendering remand unnecessary. *See Yang Lin*, 320 F. App'x at 437.

2

As to the BIA's decision to reject the Village Committee letter on authenticity grounds, we note that several courts have indicated that it is an abuse of discretion for the BIA to reject an allegedly official document simply because it has not been authenticated pursuant to 8 C.F.R. § 287.6. *See, e.g., Gui Cun Liu v. Ashcroft*, 372 F.3d 529, 532 (3d Cir. 2004) ("[A]sylum applicants cannot always reasonably be expected to have an authenticated document from an alleged persecutor."); *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 405 (2d Cir. 2005) ("We . . . find that the IJ erred by rejecting the notarial birth certificate based on Cao's failure to authenticate it pursuant to 'regulation.'"). However, the BIA may properly reject a document that has not been

authenticated in accordance with regulations if there are no convincing indications of the document's authenticity. *See Fang Zheng v. Att'y Gen. of the U.S.*, 359 F. App'x 339, 342 (3d Cir. 2009) (holding that the BIA may exclude documentary evidence that has not been "authenticate[d] in any manner"); *Shunfu Li v. Mukasey*, 529 F.3d 141, 149 (2d Cir. 2008) ("[W]hile we have rejected any requirement that corroborative documents strictly comply with the BIA's authentication regulations, we afford IJs considerable flexibility in determining the authenticity of such documents from the totality of the evidence[.]").

In the present case, we cannot say that the BIA abused its discretion in excluding the Village Committee letter on authenticity grounds. While the BIA did observe that the letter had not been authenticated in accordance with 8 C.F.R. § 287.6, that was not the sole basis for the BIA's decision to deem the letter inadequate. In addition, the BIA noted that the letter "[was] a black and white copy, [did] not contain an original signature, and contain[ed] no authenticating information." These observations alone likely would have been sufficient justification for the BIA's decision, *see Ping Wang v. Holder*, 352 F. App'x 556, 557 (2d Cir. 2009) (holding that the BIA acted reasonably in according little or no weight to a black-and-white copy of a document that bore no original signature and had no other authenticating information), but the BIA also observed that, according to a State Department report, "there [was no] indication [that] the Village Committee Birth Planning Office [had the authority] to make or enforce such statements." [4] In light of this evidence—which points

---

[4]Chen contends that the State Department report does not conclusively show that the Village Committee letter was fake, as the report merely states that the Village Committee was without authority to write the letter. According to Chen, the Committee's supposed lack of authority does not foreclose the possibility that the Committee wrote the letter. However, the fact that the

- 12 -

toward a finding that the Village Committee letter was spurious—we cannot say that the BIA's

decision was an abuse of discretion.

C

Chen also argues that the BIA abused its discretion in relying on precedent to conclude,

without additional individualized analysis, that certain documents failed to demonstrate materially

changed country conditions in China. *See* Petitioner's Br. at 30. In rejecting the "majority" of

Chen's documents, the BIA simply noted that the documents "fail[ed] to show a material change in

the family planning policy of Fujian Province in China." As support for its conclusion, the BIA

cited *In re S-Y-G-*, 24 I. & N. Dec. 247 (BIA 2007); *In re J-W-S-*, 24 I. & N. Dec. 185 (BIA 2007);

and *In re C-C-*, 23 I. & N. Dec. 899 (BIA 2006). Chen contends that the BIA's summary rejection

of the documents addressed in those cases amounts to reversible error because her situation is

factually distinct, rendering the BIA's previous analysis inapplicable. *See* Petitioner's Br. at 30

("The BIA fail[ed] to address factors significantly distinguishing [her] claim from that of *Matter of*

*S-Y-G-*.").

However, Chen's attempts to distinguish her case fail, as her circumstances are not materially

distinct from those confronting the petitioners in the BIA's precedent decisions. In those decisions,

the BIA held that the certain documents—namely, the Administrative Decisions, the Aird affidavit,

---

Committee is not authorized to write such letters certainly diminishes the probability that the
Committee actually authored the letter at issue in this case. Furthermore, the BIA's reluctance to
credit the letter was also based on other factors, such as the lack of an original signature. The
absence of indications that the letter was authentic were enough to limit its probative value. Thus,
we attach no great weight to Chen's objection.

and the Q&A Handbook—were insufficient to establish that returnees with foreign-born children were targeted for persecution, either nationally or locally.[5] *See In re S-Y-G-*, 24 I. & N. Dec. at 255 (concluding that the Administrative Decisions were insufficient to rebut a State Department report indicating that "children born abroad are 'not . . . counted' for birth planning purposes when the parents return to China"); *In re C-C-*, 23 I. & N. Dec. at 903 (holding that the Aird affidavit was insufficient to show that "China's family planning policy [was applied] to women returning to that country with children born abroad"). Like the petitioners in *In re S-Y-G-* and *In re C-C-*, Chen is a Chinese national with children born abroad. Therefore, the evidence assessed in the BIA's precedent decisions is equally unpersuasive in her case, and the BIA was permitted to dispense with detailed consideration of any previously rejected documents. *See Yang Lin*, 320 F. App'x at 437 (holding that evidence considered in the BIA's prior decisions "is necessarily inadequate on its own to establish that American-born children will be counted under the one-child policy, or that the parents of multiple American-born children have any objective reason to fear they will be persecuted"); *Wei Guang Wang v. BIA*, 437 F.3d 270, 275 (2d Cir. 2006) (holding that the BIA may summarily dismiss "evidence, such as the oft-cited Aird affidavit, which [it] is asked to consider time and again").

D

Chen also appears to argue that, given the evidence on record, the BIA erred in holding that parents of foreign-born children are not subject to persecution—in the form of either forcible sterilization or economic sanctions—upon returning to China. However, "[t]he finding that children

---

[5]The Q&A Handbook is actually irrelevant to the ultimate question in this case because it is silent with respect to China's treatment of returnees with foreign-born children.

born outside of China are not counted for purposes of China's population-control policies continues to be accepted by the BIA, as well as by other courts of appeals." *Fang Huang v. Mukasey*, 523 F.3d 640, 653 (6th Cir. 2008). Furthermore, "we have specifically held that fines levied against couples returning to China with more children than allowed under applicable family-planning policies do *not* rise to [the] level [of persecution]." *Guo Qiang Hu v. Holder*, 318 F. App'x 348, 353 (6th Cir. 2009). We see nothing in the record that compels us to deviate from these conclusions. Therefore, in light of the substantial deference owed to the BIA's determination of country conditions, *see id.* at 352, we find that the BIA did not abuse its discretion in concluding that Chen failed to show a material change in country circumstances.

IV

Chen also argues that the BIA abused its discretion in holding that she failed to make a prima facie case of eligibility for asylum. However, we need not address this argument, as the BIA properly denied Chen's motion based on her failure to show materially changed country conditions.

V

For the foregoing reasons, we DENY Chen's petition for review.