NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0857n.06

Nos. 12-4408, 12-4410

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Oct 02, 2013

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| XIANG CAN LIN and XIU RONG LIN, | ) ) |
| | ) ON PETITION FOR REVIEW |
| **Petitioners,** | ) OF AN ORDER OF THE |
| | ) BOARD OF IMMIGRATION |
| v. | ) APPEALS |
| | ) |
| ERIC H. HOLDER, JR., Attorney General, | ) ) |
| | ) **O P I N I O N** |
| | ) |
| **Respondent.** | ) |
| _____  _____ | ) |

**Before: MOORE and McKEAGUE, Circuit Judges; HELMICK, District Judge.**[*]

**KAREN NELSON MOORE, Circuit Judge.** Petitioners, Xiang Can Lin and Xiu Rong Lin, ask this court to review the Board of Immigration Appeals ("BIA") denial of their motion to reopen removal proceedings. Based on changed conditions in the People's Republic of China ("PRC"), they seek asylum. The Lins argue that the BIA abused its discretion in excluding certain documents from its consideration and failing to find that they had demonstrated a well-founded fear of persecution. For the reasons stated below, we **DENY** the Lins' petition for review.

_____

[*]The Honorable Jeffrey J. Helmick, United States District Judge for the Northern District of Ohio, sitting by designation.

## I.  BACKGROUND

Mr. and Ms. Lin, citizens of the PRC, entered the United States without permission or proper documentation on October 10, 1992 and October 1, 1993, respectively.  Administrative Record ("A.R.") at 237–38 (2009 Form I-589 at 1–2).  In 1997, petitioners married in Georgia, *id.* at 260 (Marriage License), and they have three daughters born on April 17, 1998, September 28, 2003, and July 18, 2006, *id.* at 261–63 (Birth Certificates).  Their daughters are American citizens.  *Id.*

Petitioners each filed an application for asylum within a year of arriving in the United States. *Id.* at 1367–68 (2004 Immigration Judge ("IJ") Oral Decision ("Dec.") at 2–3); *see* 8 U.S.C. § 1158(a)(2)(B) (imposing a one-year time limit).  On April 3, 1996, the Immigration and Naturalization Service[1] ("INS") issued an Order to Show Cause, charging Ms. Lin with deportability under § 241(a)(1)(A) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1227(a)(1)(A).[2]  A.R. at 3802 (Form I-221).  The INS issued Mr. Lin a Notice to Appear on September 21, 1998, charging removability under § 237(a)(1)(A), codified at 8 U.S.C. § 1227(a)(1)(A), and § 212(a)(7)(A)(i)(I) of the INA, codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I). A.R. at 2254–55 (Form I-862).  Ms. and Mr. Lin admitted the facts charged, and they conceded deportability and removability, respectively.  *Id.* at 1089 (Dec. 10, 1996 Hr'g Tr. at 2:15–17) (Ms.

---

[1]The Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, dissolved the INS and transferred its functions to the Department of Homeland Security.

[2]The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 305(a)(2), 110 Stat. 3009–546, redesignated § 241 of the INA as § 237 and codified the section at 8 U.S.C. § 1227.

Lin); *id.* at 1107 (Oct. 20, 1998 Hr'g Tr. at 17:17–21) (Mr. Lin). The INS consolidated the petitioners' proceedings in March 1999. *Id.* at 1115 (Mar. 23, 1999 Hr'g Tr. at 23).

The Lins amended their applications for asylum, claiming that they had violated the PRC's "family planning policy" and that they feared being sterilized as a result. *Id.* at 2251–52 (Am. to 1998 Form I-589). On January 7, 2004, the IJ denied the Lins' applications without allowing oral testimony. *Id.* at 1373 (2004 IJ Oral Dec. at 8). The Lins appealed to the BIA, arguing that the IJ "denied [them] due process" by preventing them from testifying. *Id.* at 1327 (2005 BIA Op. at 1). The BIA agreed, vacated the IJ's decision, and remanded for further proceedings. *Id.*

On remand, the Lins focused again on their fears of returning to the PRC in violation of the country's family-planning policies. *See id.* at 1077–80 (2006 IJ Op. at 2–5). Ms. Lin—pregnant with the Lins' third daughter—testified that she understood the policies to require the implantation of an intrauterine device after a woman's first child and sterilization after the second one. *See id.* at 1077 (2006 IJ Op. at 2). The Lins submitted information supporting this understanding, including reports from the Department of State. *Id.* at 1079 (2006 IJ Op. at 4). The government introduced exhibits showing that officials in Fujian Province enforced the family-planning policies through fines and other economic penalties—not forced sterilization. *Id.* at 1080 (2006 IJ Op. at 5). Furthermore, the government showed that the Lins willingly sent their children to live with family in the PRC for significant time. *Id.* at 1081 (2006 IJ Op. at 6). After considering this evidence, the IJ found Ms. Lin to be credible, but he concluded that the Lins had "not shown a well-founded fear of

persecution." *Id.* Thus, the IJ denied their applications and ordered them removed and deported. *Id.* at 1085 (2006 IJ Op. at 10).

The Lins appealed once more to the BIA, alleging that the IJ "failed to fully consider all evidence," that the IJ "erred in determining that [the Lins'] decision to send their first two United States-born children to [the PRC] . . . undermined their claim that they had a well-founded fear of returning to [the PRC]," and that "the record establishe[d] that they ha[d] a well-founded fear of being sterilized." *Id.* at 783–84 (2007 BIA Op. at 1–2). The BIA disagreed and affirmed the IJ's conclusions. This court, then, denied the Lins' petition for review. *Xiu Rong Lin v. Mukasey*, No. 08-3022 (6th Cir. Dec. 9, 2008) (unpublished order); *see also* A.R. at 101–03 (same).

On June 22, 2009, the Lins filed a motion to reopen removal proceedings with the BIA. *See* A.R. at 270 (2009 Mot. to Reopen at 1). Motions to reopen have strict filing requirements. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(2). The BIA found that the Lins' motion was untimely because it was filed more than two years after the regulation's deadline. A.R. at 91 (2010 BIA Op. at 1). It denied the motion because the Lins failed to introduce new evidence showing "changed county conditions" and, thus, to qualify for an exception to the filing requirements. *Id.* at 91 (2010 BIA Op. at 1) (quoting § 240(c)(7)(C)(ii) of the INA, codified at 8 U.S.C. § 1229a(c)(7)(C)(ii) and 8 C.F.R. § 1003.2(c)(3)(ii)). The Lins did not seek review of the BIA's decision.

The Lins filed their second motion to reopen removal proceedings and remand on April 5, 2012 pursuant to 8 C.F.R. § 1003.2(c). *See* A.R. at 17 (2012 Mot. to Reopen at 1). This motion also

4

failed to comply with the timing and number requirements. *Id.* at 3 (2012 BIA Op. at 1). And again, the Lins attempted to qualify for an exception by demonstrating changed country conditions, and they submitted numerous documents in that effort. *See id.* at 4–5 (2012 BIA Op. at 2–3); Pet'r's Br. at 6–7. The BIA rejected the Lins' argument for several reasons: (1) "[s]ome of the documents [were] not new or previously unavailable," A.R. at 5 (2012 BIA Op. at 3); (2) "[t]he documents from China [were not] authenticated pursuant to 8 C.F.R. § 1287.6," *id.*; (3) Mr. Lin did not demonstrate that "the documents and regulations from other villages, towns, and cities [were] applicable to him," *id.*; (4) the Lins' evidence was "inadequate" to undermine the Department of State's 2007 Country Profile of China ("2007 Profile"), *id.* at 6 (2012 BIA Op. at 4); and (5) the Lins did not "demonstrate[] that [they] would be subjected to economic harm amounting to persecution," *id.* The Lins timely filed a petition for review.

## II. ANALYSIS

### A. Standard of Review

We review the BIA's denial of a motion to reopen proceedings for an abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 323 (1992); *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006). The BIA abuses its discretion when its "'denial of [the] motion to reopen . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)) (addition

and omission in *Allabani*). We review the BIA's legal determinations de novo. *Bi Feng Liu v. Holder*, 560 F.3d 485, 490 (6th Cir. 2009).

**B. Merits**

Section 240(c)(7)(A) of the INA, codified at 8 U.S.C. § 1229a(c)(7)(A), permits an alien to file one motion to reopen removal proceedings, provided that the filing is "within 90 days of the date of entry of a final administrative order of removal," 8 U.S.C. § 1229a(c)(7)(C)(i); *accord* 8 C.F.R. § 1003.2(c)(2). This timing restriction does not apply, however, when "the basis of the motion is to apply for relief under [8 U.S.C. §] 1158 or [§] 1231(b)(3) . . . and is based on changed country conditions . . . ." § 1229a(c)(7)(C)(ii). Still, these motions to reopen must contain evidence of "changed country conditions" and "such evidence [must be] material and . . . not available and would not have been discovered or presented at the previous proceeding." *Id.*; *see also Niyibizi v. Mukasey*, 300 F. App'x 371, 374 (6th Cir. 2008); *Haddad*, 437 F.3d at 517–18. Furthermore, the evidence must establish a prima facie case for relief on the merits of the underlying petition. *Alizoti v. Gonzales*, 477 F.3d 448, 451–52 (6th Cir. 2007). In total, these showings constitute a "heavy burden" for the petitioner to lift. *In re Coelho*, 20 I. & N. Dec. 464, 473 (1992).

The Lins claim that their otherwise time- and number-barred motion falls within the limited exception for asylum applicants. The BIA found that the Lins failed to meet their burden of proof. The Lins now allege that the BIA abused its discretion in several ways when it rejected their motion: (1) the BIA did not make a rational explanation for rejecting certain documents as "not new or previously unavailable" and "incomplete"; (2) it departed from established policy by rejecting

evidence related to other towns and cities in the PRC as not applicable to the Lins; (3) it required

authentication of all documents from the PRC; and (4) it found that the evidence did not demonstrate

changed country conditions in the PRC. *See* Pet'r's Br. at 10–12. Each of these arguments fails for

the reasons explained below.

**1.**

The BIA did not abuse its discretion in excluding, or in explaining its exclusion of, certain

submissions as "not new or previously unavailable" or "incomplete." In its 2012 decision, the BIA

recited the applicable standard for introducing "material" and "previously unavailable" evidence.

*See* A.R. at 3 (2012 BIA Op. at 1) (citing 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii);

*In re S-Y-G-*, 24 I. & N. Dec. 247 (BIA 2007), *aff'd Shao v. Mukasey*, 546 F.3d 138 (2d Cir. 2008)).

The BIA then recounted the Lins' submissions, including relevant dates for various documents. *See*

A.R. at 4–5 (2012 BIA Op. at 2–3). Some of these documents, the BIA noted, were previously

submitted, such as Mr. Lin's "marriage certificate, his children's birth certificates, the 1999 Chang

Le City Family Planning Q & A Handbook, . . . [and] a portion of the 2009 Annual Report of the

Congressional-Executive Commission on China." *Id.* at 4 (2012 BIA Op. at 2). Others were

previously available, such as the 1994, 1995, 1998, and 2005 country reports and profiles on the

PRC, which predated the BIA's 2007 and 2010 decisions. *See id.* at 5 (2012 BIA Op. at 3); *see also*

*Bi Feng Liu*, 560 F.3d at 491 (supporting the BIA's rejection of documents available and dated

before previous disposition). Additionally, the BIA commented that still other documents were

incomplete, A.R. at 5 (2012 BIA Op. at 3), and the Lins admitted as much in their filings, *see* A.R.

at 2314–28 (Index of Docs. at i–xv) (providing "excerpts" and "selected pages" of documents). No more detailed explanation was necessary here to reject these submissions.

In their brief, the Lins took particular issue with the BIA's failure to address their "highly probative" FOIA documents. *See* Pet'r's Br. at 18. This charge misunderstands the BIA's duty. The Lins relied upon *Sylla v. INS*, 388 F.3d 924 (6th Cir. 2004), for the proposition that the BIA "must include 'specific reasons' for its conclusions." Pet'r's Br. at 18 (quoting *Sylla*, 388 F.3d at 926). The BIA, however, must only give a rational explanation for why it rejected the Lins' motion (its ultimate conclusion); it need not "mention every piece of evidence before it or every logical element of a motion." *Yan Xia Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008). *Sylla* itself supports this understanding of the BIA's responsibilities. In that case, the petitioner challenged an IJ's adverse credibility determination, not an IJ's consideration of one piece of evidence in making the overall assessment. *See Sylla*, 388 F.3d at 925. In that context, we stated that the BIA must give specific reasons for its findings, which the BIA did when denying the Lins' motion to reopen. Accordingly, the BIA did not abuse its discretion when explaining its rejection of some documents as previously available or incomplete.

**2.**

The BIA did not depart from established policy or abuse its discretion when it rejected documents purporting to describe the enforcement of the PRC's family-planning policies in other areas of the country as immaterial. In a motion to reopen, petitioners must demonstrate a well-founded fear of persecution (i.e., being forcibly sterilized for violating the family-planning policies)

upon returning to the PRC. *See Bi Xia Qu v. Holder*, 618 F.3d 602, 606 (6th Cir. 2010). "The feared persecution must relate to the [petitioners] individually, not to the population generally." *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004) (internal quotation marks omitted). Furthermore, petitioners bear the burden of "offer[ing] reasonably specific information showing a real threat of individual persecution." *Id.* (internal quotation marks omitted). To that end, the BIA has accepted the Department of State's finding that "[d]eviations in implementing [the family-planning policies] occur at the provincial, or even village, level." *In re J-H-S-*, 24 I. & N. Dec. 196, 199 (BIA 2007) (citing 2007 Profile at 23). Thus, the Lins must present evidence showing that having their U.S.-born children "violated family planning policies in [their] local province, municipality, or other locally-defined area, and that current local family planning enforcement efforts would give rise to a well-founded fear of persecution because of the violation." *Id.* at 198. Evidence concerning the implementation of family-planning policies in other parts of the PRC is immaterial to the Lins' motion.

The Lins originate from and plan to return to Ke Feng Village, Tantou Town, Changle City, Fujian Province in the PRC. *See* A.R. at 5 (2012 BIA Op. at 3). As part of their application, the Lins submitted several reports and affidavits regarding the PRC's family-planning policies in general and their enforcement in other provinces or villages. *See, e.g.*, *id.* at 3183–3209 (Ex. QQQ); *id.* at 3210–3364 (Ex. RRR). The BIA found that the Lins had "not shown that the[se] documents and regulations from other villages, towns, and cities are applicable to [them]." A.R. at 5 (2012 BIA Op. at 3). While many of these documents discussed Fujian Province, few detailed the policies or their

enforcement in the Lins' township or village. These documents do not help to determine whether the Lins in particular will be in violation of the family-planning policies as they are implemented in their locality, nor do they show that the local authorities will subject them to forcible sterilization. Therefore, the BIA's rejection of these documents as immaterial was not an abuse of discretion.

The Lins also argue that the BIA's rejection of documents pertaining to Fujian Province is contrary to precedent. *See* Pet'r's Br. at 22–23. The Lins, however, are in error. Certainly, the BIA has "no discretion to ignore its own precedent," *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 712 (6th Cir. 2004), but in this instance, it followed controlling law. As noted above, the BIA has accepted that the enforcement of the family-planning policies varies by locality, *see J-H-S-*, 24 I. & N. Dec. at 198–200, but contrary to the Lins' assertions, the BIA's statement in *J-H-S-* that petitioners must demonstrate a violation of family-planning policies in their "province, municipality, or other locally-defined area" is not a hard command that panels accept all information touching on the policies in petitioners' provinces, *id.* at 198. Rather, it is a reminder that petitioners must present evidence that they individually, not Chinese aliens generally, face persecution if removed to the PRC. In *J-H-S-*, the petitioner also submitted the 1999 Chang Le City Family Planning Q & A Handbook and the 2003 Administrative Decision of the Fujian Province Family Planning Administration; the BIA denied that appeal because those documents did not qualify as "persuasive evidence that [the children's births] would trigger enforcement activity in Fujian Province." 24 I. & N. Dec. at 202. Similarly, these documents do not touch on the Lins' individual chances of facing sterilization and are therefore immaterial. In *In re H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. 209, 216 (BIA 2010), *rev'd in*

*part*, *Hui Lin Huang v. Holder*, 677 F.3d 130 (2d Cir. 2012) (requiring the BIA to find clear error

to reverse an IJ's finding that a future event would likely occur), the BIA denied an appeal where

petitioners submitted letters from relatives and friends reporting sterilizations in the same province

years before. Like those submissions, the Lins' submissions are "not current" and "do not show that

the individuals referenced are similarly situated to the respondent." *H-L-H-*, 25 I. & N. Dec. at

215–16. The BIA's decision fits squarely within these prior opinions, and thus, it was not an abuse

of discretion.

**3.**

When the BIA required the PRC documents to be authenticated, it did not abuse its discretion

either. In its opinion, the BIA noted that the Lins' PRC documents had not been authenticated

pursuant to 8 C.F.R. § 1287.6, but that the petitioners had made other efforts to authenticate some

foreign documents, such as through expert testimony. A.R. at 5–6 (2012 BIA Op. at 3–4); *see also*

A.R. at 2754–2761 (Sapio Aff. at 1–7). The BIA rejected the Lins' "foreign documents that ha[d]

not been sufficiently authenticated in any manner [as not] genuine, authentic, and objectively

reasonable." A.R. at 5 (2012 BIA Op. at 3) (citing *H-L-H*, 25 I. & N. Dec. 209). The Lins claim that

requiring authentication in this instance was an abuse of discretion, but their argument fails for two

reasons: (1) the BIA has wide discretion to reject foreign documents that it does not consider

genuine or authentic; and (2) the BIA considered the documents nonetheless and excluded them on

other grounds.

Rejecting foreign documents that have not been authenticated pursuant to 8 C.F.R. § 1287.6 or a comparable procedure is within the BIA's discretion and part of its mandate. Section 1287.6 requires petitioners seeking to introduce copies of foreign documents to have a government official certify their authenticity. § 1287.6(b)(1); *Ramaj v. Gonzales*, 466 F.3d 520, 530 (6th Cir. 2006). This court, however, has recognized that § 1287.6 is not the exclusive method for authenticating foreign government documents, *see Qi Yang Chen v. Holder*, 441 F. App'x 342, 346 n.5 (6th Cir. 2011), and the Lins' attorney made various efforts to authenticate the PRC documents, such as through Dr. Sapio's expert testimony, *see* A.R. at 2754–61 (Sapio Aff. at 1–7). That said, the BIA was correct in excluding the small portion of the PRC documents that were not authenticated in any manner. While immigration proceedings are not conducted pursuant to the more stringent Federal Rules of Evidence, *Yongo v. INS*, 355 F.3d 27, 30 (1st Cir. 2004), the BIA must screen evidence to ensure its reliability. Here, the excluded evidence would benefit the Lins, but in other cases, the potentially inauthentic evidence might harm the petitioner. For example, in *In re D-R-*, 25 I. & N. Dec. 445 (BIA 2011), cited favorably by the Lins, the petitioner denied the authenticity of evidence linking him to extrajudicial killings in Bosnia. The IJ and BIA required the government to authenticate the evidence through expert testimony before it consulted the documents in deciding whether to order the petitioner's removal. *Id.* at 460-61. The integrity of the immigration proceedings demands that these decisions are made on the basis of verified and accurate information. Accordingly, the BIA did not abuse its discretion in excluding information lacking evidence of authenticity from its decision.

The Lins' argument goes beyond this modest claim, however. They assert that the BIA rejected many documents that are "self-authenticating" official documents under the Federal Rules of Evidence. *See* Pet'r's Br. at 18–21. This argument is an exaggeration, because a close reading of the BIA opinion reveals that it likely rejected only those documents that had "not been sufficiently authenticated in *any* manner." A.R. at 5 (2012 BIA Op. at 3) (emphasis added). Even if the panel rejected most of the PRC documents, it matters little because the BIA considered the PRC documents and then excluded them for being previously available or immaterial as discussed above. *Id.* at 4–6 (2012 BIA Op. at 2–4). Such a decision is not an abuse of discretion. In *Qi Hua Chen v. Holder*, 397 F. App'x 111 (6th Cir. 2010), this court faced a similar situation. The BIA noted that a certain PRC document lacked "authenticating information," but it also rejected the document because the issuing office lacked the authority to enforce its edict, making the document irrelevant. *Id*. at 117–18. This court could not say that the BIA's action was an abuse of discretion. We cannot do so in this case either.

**4.**

Finally, the BIA did not abuse its discretion in finding that the Lins had failed to carry their heavy burden of showing changed country conditions. As the Lins rightly note, "[i]n determining whether evidence accompanying a motion to reopen demonstrates a material change in country conditions that would justify the reopening, [the BIA] compare[s] the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing below." Pet'r's Br. at 24 (quoting *S-Y-G-*, 24 I. & N. Dec. at 253) (alterations in brief). On this evidence, petitioners

13

must make "a *prima facie* showing that [they] currently ha[ve] a well-founded fear of persecution in China." *S-Y-G-*, 24 I. & N. Dec. at 253.

In 2007, the BIA affirmed the IJ's decision denying the Lins' applications for asylum. A.R. at 783–785 (2007 BIA Op. at 1–3). The Department of State released a profile of the human rights situation in the PRC the same year. *See id.* at 2461–93 (2007 Profile 133-165). The BIA treats these Department of State documents, such as the 2007 Profile, as "highly probative" and "usually the best source of information on conditions in foreign nations." *Id.* at 6 (2012 BIA Op. at 4) (citing *H-L-H-*, 25 I. & N. Dec. at 214). In that report, the Department of State found "no cases of forced abortion or sterilization in Fujian in the last 10 years." *Id.* at 2467 (2007 Profile at 139). Rather, the authorities used "[s]ocial compensation fees" to punish violators of the policies. *Id.* at 2468 (2007 Profile at 140). In 2010, the Congressional-Executive Commission on China found that "implementation [of the policies] tends to vary across localities" still. *Id.* at 2335 (2010 Annual Report at 116). Absent the excluded evidence discussed above, the Lins presented no evidence that demonstrates that their locality now performs involuntary sterilization procedures. Even if the evidence is included, the Lins still did not prove that they personally have a well-founded fear of being sterilized by family-planning authorities. Accordingly, the BIA did not abuse its discretion in denying the Lins' motion to reopen removal proceedings.

### III.  CONCLUSION

The BIA did not abuse its discretion in finding that the Lins failed to demonstrate changed country conditions.  Thus, the Lins' motion to reopen removal proceedings was time- and number-barred.  Accordingly, we **DENY** the Lins' petition for review.