**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0609n.06
No. 18-3108

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 04, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CLAUDIA MORAN-PEREZ, | ) | |
| | ) | |
| **Petitioner,** | ) | ON PETITION FOR REVIEW |
| | ) | OF A FINAL ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| MATTHEW G. WHITAKER, Acting | ) | |
| Attorney General, | ) | |
| | ) | **OPINION** |
| **Respondent.** | ) | |
| | ) | |

Before:  MOORE, CLAY, DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.**  Petitioner Claudia Arely Moran-Perez ("Moran-Perez") and her daughter Claudia Nicole Linares-Moran,[1] native citizens of El Salvador, seek review of the Board of Immigration Appeals' ("BIA") order denying their motion to reopen removal proceedings and its finding that Moran-Perez failed to demonstrate a likelihood of success on the merits of their asylum claim.  Because the BIA did not abuse its discretion, we **DENY** Moran-Perez's petition for review.

**I.  BACKGROUND**

Moran-Perez and her daughter entered the United States without inspection on or around September 12, 2012.  On September 21, 2012, the Department of Homeland Security issued Notices to Appear ("NTA") for Moran-Perez, charging her with removability pursuant to 8 U.S.C.

---

[1] Moran-Perez's application was consolidated with her daughter's petition.  We will refer to them jointly as "Moran-Perez."

§ 1182(a)(6)(A)(i) and initiating removal proceedings. Moran-Perez admitted the factual allegations in her NTA, and conceded removability as charged, but sought relief from removal in the form of asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

On September 12, 2013, Moran-Perez filed an asylum application before the Immigration Judge ("IJ"), claiming harm or fear of harm on account of Moran-Perez's political opinion and membership in a particular social group that opposed gangs and cartels and their ties to local government. At the hearing on May 19, 2014, Moran-Perez testified that: she is a supporter of the ARENA party in El Salvador and that she fears retaliation from the FMLN party, of which the then-recently-elected Communist President was a member; that gang members extorted money from her because she was opening a hair salon business from her home; and that she and her daughter received death threats after she refused to pay them and reported the extortion to the police. Moran-Perez further testified that after receiving those threats, she left home to stay at her mother's house, where she and her daughter continued to receive threats and where threats were also made against her parents' lives. Moran-Perez and her daughter fled to the United States.

On May 19, 2015, the IJ denied Moran-Perez's application for asylum, withholding of removal, and CAT protection. The IJ determined that Moran-Perez was not credible, reasoning, among other things, that Moran-Perez's failure to inform the Border Patrol agent that she was fleeing persecution "[e]ffectively impeaches [her] testimony that she came to the United States to

flee from gangs in El Salvador."[2]   Alternatively, the IJ found that Moran-Perez failed to demonstrate a well-founded fear of persecution on account of a protected ground.

On June 16, 2014, Moran-Perez filed a timely appeal of the IJ's denial of relief.  On September 16, 2015, the BIA affirmed the IJ's determination that Moran-Perez failed to demonstrate past persecution, or a well-founded fear of persecution based on her political opinion or membership in a particular social group.  Specifically, the BIA found that, even if Moran-Perez was credible, Moran-Perez's alleged social group did not meet the legal requirements of a particular social group because the group "is not marked by a common immutable characteristic, sufficiently particular, or socially distinct in Salvadoran society."  Further, the BIA determined that Moran-Perez failed to establish the requisite nexus between her membership in her social group and the harm and fears she asserted.  The BIA dismissed Moran-Perez's appeal, resulting in a final order of removal on September 16, 2015.

On July 19, 2017, more than 90 days after the final order of removal, Moran-Perez filed an untimely motion to reopen with the BIA based on changed country conditions.  In support of her motion, Moran-Perez presented articles and reports as evidence of increased violence against women and enhanced sophistication of the Maras gang's control in El Salvador.

On January 3, 2018, the BIA denied Moran-Perez's motion to reopen, concluding that she failed to demonstrate changed country conditions and, furthermore, that she did not show a reasonable likelihood of success on the merits of her asylum claim.  Specifically, the BIA

---

[2] The IJ also noted that Moran-Perez provided inconsistent testimony about whether her husband resided in the United States and that, on cross-examination, she stated that her husband "did not know about her problems with the gangs."

determined that Moran-Perez failed to establish with specificity how the conditions in El Salvador had changed since her last hearing, and further found that Moran-Perez had not provided any evidence or arguments that the Salvadoran government or gang members have any interest in her. Moran-Perez timely appeals.

## II. Discussion

### A. Standard of Review

Moran-Perez appeals the BIA's denial of her motion to reopen her removal proceedings. We review the BIA's denial of a motion to reopen for an abuse of discretion. *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006). The BIA abuses its discretion when its denial of a motion to reopen "[is] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir.2005) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)). This type of review is "exceedingly narrow." *Hazime v. INS*, 17 F.3d 136, 140 (6th Cir. 1994).

### B. Analysis

An alien previously ordered removed from the United States may seek to reopen her removal proceedings. 8 U.S.C. § 1229a(c)(7)(A). Generally, the motion to reopen must be filed within 90 days of the date of entry of a final administrative order of removal. § 1229a(c)(7)(C)(i). However, as relevant here, the 90-day deadline does not apply if the motion to reopen is "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered." 8 U.S.C. § 1229a(c)(7)(C)(ii). Evidence of changed conditions must be

4

"material and [must not have been] available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1103.2(c)(3)(ii).

On appeal, Moran-Perez makes two principal arguments. First, she argues that the BIA erred by failing to find changed country conditions. Next, she argues that the BIA erred by finding that she did not have a reasonable likelihood of success on her asylum claim.

Upon review, we find that the BIA did not abuse its discretion in finding that Moran-Perez failed to demonstrate changed country conditions in El Salvador to warrant granting her untimely motion to reopen. We need not address Moran-Perez's argument that the BIA erred in finding that she was not likely to succeed on the merits of her asylum claim because the BIA properly denied Moran-Perez's motion based on her failure to show materially changed country conditions. *See Chen v. Holder*, 397 F. App'x 111, 119 (6th Cir. 2010).

In support of her motion to reopen, Moran-Perez submitted numerous exhibits detailing conditions in El Salvador, including a 2012 U.S. Department of State Country Report describing country conditions at the time of her final order of removal. Moran-Perez also provided a 2016 U.S. Department of State Country Report, indicating that people who enter and leave the areas controlled by the Maras gang face interrogation and scrutiny. But in her motion, Moran-Perez did not cite to the 2012 report, nor did she point to the conditions as she alleged they were in 2015, compared to current conditions in El Salvador. Instead, Moran-Perez argued that the "power of the gangs, or Maras, and violence against women in El Salvador has increased and worsened since the time of [her] last hearing," and that her daughter was now in particular danger because she "is at the age where Maras seek to recruit or compel to collaborate." Further, Moran-Perez argued

that having been "a victim of extortion and crime in El Salvador, and [having] reported that crime to the police . . . [she would be] a marked woman with an adolescent girl and an infant" returning to a gang-controlled country.

In its order, the BIA found that Moran-Perez's untimely motion did not warrant reopening for changed country conditions because the evidence Moran-Perez submitted failed to "demonstrate[e], with any specificity, how conditions have materially changed in El Salvador since [Moran-Perez's] 2014 hearing." Moreover, the BIA found that Moran-Perez

> provided no evidence or argument that the Salvadoran government, or any gang members, have any interest in [Moran-Perez] at this time for any reason, and we note that [Moran-Perez] ha[s] not visited El Salvador since [her] last entry to the United States in 2012.

Moran-Perez argues that the BIA failed to provide more than a conclusory statement to explain why changed conditions did not exist in El Salvador and that the BIA abused its discretion by failing to consider evidence and arguments that were relevant to the determination. Specifically, Moran-Perez contends that the BIA's decision does not "analyze . . . the previous threats [Moran-Perez] experienced at the hands of the Maras *combined* with the newly available information including the growing influence of the Maras and increased vulnerability of her teenage daughter." We are not persuaded.

The BIA explicitly acknowledged the evidence Moran-Perez submitted, including her "affidavit . . . [and a report indicating] general country condition[s]." Some of these documents, the BIA noted, were previously submitted, such as a "2012 police complaint," but the BIA ultimately found such evidence lacking to establish changed conditions. Although the BIA must provide a rational basis for its denial of a motion to reopen, we do not require that the BIA "list

6

every possible positive and negative factor in its decision." *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003). The BIA's decision, though brief, discusses the evidence presented by Moran-Perez, explains why the evidence is unpersuasive and concludes that Moran-Perez has not shown changed country conditions that would excuse her untimely filing. Thus, we hold that the BIA provided sufficient justification for denying Moran-Perez's motion to reopen based on changed country conditions.

### III. CONCLUSION

Because the BIA did not abuse its discretion by denying Moran-Perez's motion to reopen based on changed country conditions, we **DENY** her petition for review of the BIA's decision.